JOHN SCOTT LINEBERRY, BY HIS NEXT FRIEND, W. L. LINEBERRY, v. THE NORTH CAROLINA RAILWAY COMPANY.

(Filed 21 May, 1924.)

1. **Negligence—Intervening Cause—Proximate Cause—Railroads—Municipal Corporations—Cities and Towns—Ordinances.**

    While it may be negligence *per se* for the speed of a railroad train to exceed in a city or incorporated town the speed required by an ordinance, the company is not liable in damages for the killing of a 9-year-old child at play at a permitted crossing, whose death is caused by his being unexpectedly pushed into the train by his companion and playmate as it was passing, the act of the child's companion being the independent, intervening and sole and proximate cause of the death.

2. **Same—Evidence—Questions of Law.**

    Where, upon the trial of an action, only one inference can reasonably be drawn from the evidence, no issue of fact arises for the jury to determine, and the question is one of law for the court.

APPEAL by plaintiff from *Finley, J.,* at December Special Term, 1923, of ALAMANCE.

Civil action. The plaintiff, John Scott Lineberry, is a minor, and W. L. Lineberry has been duly appointed his next of friend, and the defendant is a corporation, organized and existing under the laws of North Carolina. Its roadbed, equipment, etc., is leased to the Southern Railway Company, which is operating same, under the lease, as a common carrier of passengers and freight.

The plaintiff alleges:

"1. That on 13 April, 1921, the defendant, among other trains, was operating and running a fast freight train through the town of

Mebane, N. C., a thickly populated town; that in said town there is a double track, extending some distance east and about three blocks west of the passenger and freight station of the defendant; that from about one-half mile west of the said station to the said station, and beyond, there is a downward and steep grade; that about two and one-half blocks west of said station there is a deep cut, in which is located two parallel tracks of the defendant, with an embankment on either side of said tracks about 8 feet in height; that at this point there is a well-worn footpath, crossing said tracks, which is and has been used for more than a year by the school children of said town who live on the north side of said track in going and returning from school, and by pedestrians generally; that the plaintiff, at the time of the injury hereinafter alleged, lived on the north side of said railroad, and the public-school building of the town was located on the south side of said railroad, about two blocks therefrom; that at the time of the said injury the plaintiff was attending said school and was in the habit of crossing, with other children, the railroad at this point; that there were dirt steps to the said embankment, which were very steep on both side of said railroad, and that the plaintiff and his schoolmates were in the habit of stopping in this cut and running down or sliding down said embankment and playing there; that local freight trains usually stopped at said freight station, and, when so stopped, the rear end of said local train was frequently extended to or near this point, where the said children, at their play, frequently boarded or attempted to board the local freight trains and ride down to the said station.

"2. That on 13 April, 1921, in the afternoon, about 3 o'clock, the plaintiff and his schoolmates, of tender years, and all about the age of plaintiff, were returning from school and stopped in this cut, and there were engaged, as usual, in playing and watching the trains, when a fast train came along, running at the rate of 25 miles an hour, and before plaintiff could realize his danger he was struck by the said fast train and drawn by suction or some other force of said train under one of the wheels of said train, and had his left foot cut entirely off below the ankle, and his left leg above the ankle horribly crushed, mangled and mutilated and so injured that it was necessary to hurry him to a hospital at Burlington, N. C., about eight miles distant, where his left leg was amputated about four inches above the knee, in consequence of said injury, and where he was compelled to remain for ... .weeks, and by reason of said injury the plaintiff was caused to suffer the most intense pain, in body and in mind, and was permanently injured thereby, and still suffers therefrom.

"3. That the defendant knew or, by the exercise of reasonable care, should have known that this footpath or crossing was almost daily used

by little children of immature years, and further knew or should have known that the children were attracted to this place and were frequently playing there, and that the defendant had knowledge of the fact that these children were frequently tempted to board and did board and play on its local freight trains; that the defendant knew or should have known that this plaintiff and his playmates who gathered there and played and crossed there were of such tender years that they could not appreciate and comprehend the danger to which they were subjected by the dangerous conditions at this point.

"4. That the defendant owed to the plaintiff the duty of removing or remedying the dangerous conditions at said foot-crossing, and, with its knowledge thereof, a further duty of keeping a proper lookout while approaching said crossing, in anticipation of the obvious and known dangers existing there, and also the duty of observing the ordinance of said town regulating the speed of its trains, and 'that in breach and by reason of the breach of these duties the plaintiff, without fault on his part, was injured in the way and manner aforesaid.

"5. That the defendant was negligent, in that it failed to remove or remedy the conditions which it knew or should have known by the exercise of reasonable care had been created, allowed and permitted to exist at this dangerous crossing, and the dangers to which this plaintiff was subjected at this place; and in that the defendant was operating and running the said fast train on said occasion at a reckless, dangerous and unlawful rate of speed, in violation of section L, chapter 5 of the ordinances of the town of Mebane, which provides that 'It shall be unlawful for any person, persons or corporation to run any train or trains within the corporate limits of the town of Mebane at a greater rate of speed than fifteen miles an hour in said town'; and in that it failed, in running at this rate of speed, to keep a proper lookout for the danger or dangers which it knew or, by exercise of reasonable care, should have known and anticipated at said point; and in that the defendant was violating its common duty not to run its trains at an excessive, dangerous and unnecessary speed and manner, under the circumstances of this case, while approaching and crossing this well-known and well-worn footway across this track in said town, within the corporate limits of which the said injury was inflicted.

"6. That the negligence of the defendant's lessee, as aforesaid, was the proximate cause of the said injury to the plaintiff, who is now of the age of less than nine years and deprived of one leg and injured for life.

"7. That by reason of said injury by the negligence of the defendant's lessee, as aforesaid, the plaintiff has been endamaged in the sum of $25,000."

The defendant denies the material allegations of the complaint, and for a further defense avers:

"That on the date mentioned in the complaint it was operating a freight train, and that the same was running through the town of Mebane at a rate of speed not in excess of eight miles per hour; that after the engine of said freight train had passed ·the point at which plaintiff was injured, at which point there was no footpath or crossing of any kind going across the tracks of the defendant, and, while said freight train was still in motion, the plaintiff, without giving any sign of his intention so to do, suddenly ran to said train and tried to swing upon a moving box car, and that while so ·doing, and before defendant could possibly, in any way, prevent said act or stop said train, the plaintiff fell and was injured by having his leg crushed; that the defendant was guilty of no negligence in any way; that in no way it was the cause of or brought about the injury to plaintiff."

The defendant, for a further defense, and as a plea of contributory negligence, alleges: "That on the date mentioned in. the complaint, while the defendant was operating a freight train and was running the same through the town of Mebane at a rate of speed not in excess of eight miles per hour, and after the engine of said freight train had passed the point where plaintiff was injured, there being at said point no crossing of any kind, or footpath usually used as a crossing, there plaintiff carelessly and 'negligently, .and without giving any sign of warning of his intention so to do, attempted to swing upon a moving box car of the train operated by defendant, and in so doing fell and was injured; that the careless and negligent acts of the plaintiff were the approximate cause of the injury sustained by plaintiff, and defendant pleads such negligent acts on the part of the plaintiff as acts constituting contributory negligence and as a bar to any right of plaintiff to recover."

*Thomas C. Carter and Koontz & Wharton for plaintiff.*
*J. Dolph Long for defendant.*

CLARKSON, J. The court below, upon motion of defendant, rendered judgment of nonsuit against the plaintiff, and the plaintiff excepted, assigned error, and appealed to this Court.

The evidence of plaintiff, John Scott Lineberry, was as follows:

"My father's name is W. L. Lineberry. Little folks go to the Bad Man if they don't tell the truth. I am 11 years old now, and was about 9 years old when my leg got injured. That has been about two years ago, and happened on a day about half-past 3 o'clock, while I was on my way home from school. I was near the railroad. Clay Qualls pushed me into the train. I was crossing the railroad at the 'hosiery

mill. I had crossed it there before. The hill is steep there—I mean, it is steep to go up from the railroad. There were two other boys with me that evening—Mr. Moore's boy and Mr. Qualls' boy—one of them about my size. There was a train coming while I was standing there at the track, about 5 feet from the track. The train passed. I saw the engine. It was a freight train. We were not playing in the cut. I was sliding down the bank the other evening, but not that evening. I got hurt when he pushed me into the train and cut my leg off. I do not know how long. I have been going to school something like three years before that. I had not been going across the railroad at this place very long. I live across the railroad, up there on the north side of the railroad. Do not know how long I have been living here. I did not go to school every day that way. The school was on the south, and I lived on the north side."

On cross-examination, he said: "The schoolhouse is on the street that goes by the Mebane Bedding Company. This street goes across the railroad track and is an open street across there. Clay Qualls and Floyd Moore were with me. I do not know that we three boys were the same age. We played together. We started up the street that goes by the Durham Hosiery Mills. The engine had done passed when we got to the Durham Hosiery Mill, and the train was going down the track. That was before I got to the cut. We went by the Durham Hosiery Mills. There is a street in front of the mill, along the railroad track, that goes the same way the railroad track goes. We crossed that street and then went down the side of the embankment where the train was going. Clay Qualls went with me, and Floyd Moore stopped at the hosiery mill. After we got there and saw the train going by, we went on down into the cut, where the train was. I did not go near the train; I went about 5 feet from the bank down there. After we went down the bank, we had to cross the sidetrack before we got to the main track, and the train was on the main track. We crossed the sidetrack and went near where the train was going, on the main line. We went within about 2 feet of the train. *Then Clay Qualls pushed me under the train, and my foot was cut off.* The caboose passed pretty quick after I got hurt; the rear end was not far from me when I was pushed. It was a long train. In going to school we frequently went across at the Mebane Bedding Company crossing. I have seen other children crossing there."

Shelley Hoskins testified, in part: "I work at the brickyard. In April, 1921, I worked for Mr. J. W. Nicholson, at Mebane. On the afternoon of the 13th of April, when this boy was injured, I had been out to Mr. Nicholson's farm to get some hay, and at the time this accident occurred I was right there at the railroad crossing, on the south side. I was sitting on top of a load of hay. I could see the railroad

track. I was standing right opposite the track. My team was headed towards the station. The train was going towards the station—going east. I saw this little boy at the time the locomotive of the train passed the point where the pathway that has been described crossed the railroad. This little boy and two or three more little boys came right up to the cut. They got there just about the time the engine got there, and I think him and another one or two started down the bank, and *I seen one little boy give him a shove, and just as they give him a shove he ran across the sidetrack and slipped, some way, and I seen him fall under the train.* . . . After the engine passed, I saw two or three boys go down the embankment. Yes, the engine just had gone by. The train was on the main line. The pass-track was between the embankment, where these children went down the main track. They had to pass over the pass-track before they got to the train. *About the time he got on the pass-track he gave him a push and he kind of fell over. At that time, I reckon, the train was about half by.*"

E. T. Carr testified, in part: "All classes, both children and adults, use the pathway—mostly children, I would say—children going to school. The school is about three city blocks. I have seen children playing up and down the banks."

J. P. Cates testified, in part: "I cannot say for certain how long this particular path has been across the railroad at that place—ever since I have been in Mebane—about ten years. People use this path every day. Yes, it is used by children going and coming from school. I have seen children playing around and running across and running down one bank and up the other across the track. I have seen children there when the trains were there."

The evidence, succinctly taken, in a light most favorable to plaintiff, on the motion of nonsuit, was that the plaintiff, John Scott Lineberry, was returning from school about 3:30 o'clock in the evening, and was seriously injured by the defendant's train on the main line, cutting his leg off. Children going to school used the pathway and played up and down the banks. The freight train was running through the town of Mebane about twenty-five miles an hour. The town ordinance did not permit a greater rate of speed than fifteen miles an hour. Lineberry was about 9 years old and had been going to school about three years. The boys were in the habit of going along the railroad to school through the cut. The day of the injury Lineberry was not playing in the cut at the place he was injured. He had not been going across the railroad very long. He lived on the north side of the railroad, and the school was on the south side. At the time of the injury the train had passed him and was going down the track. He and Clay Qualls went down the side of the embankment where the train was going, and went down into

the cut where the train was. He did not go near the train, but went about 5 feet from the bank; before he could get to the main track, that the train was on, he had to cross a sidetrack.

The young lad said: *"We crossed the sidetrack and went near where the train was going, on the main line. We went within about two feet of the train. Then Clay Qualls pushed me under the train, and my foot was cut off."*

Shelley Hoskins testified: "I think him and another one or two started down the bank, and *I seen one little boy give him a shove, and just as they give him a shove he ran across the sidetrack and slipped, some way, and I seen him fall under the train. . . .* About the time he got on the pass-track *he gave him a push and he kind of fell over. At that time, I reckon, the train was about half by."*

Plaintiff contends that children played up and down the bank of the cut, and used the path across the railroad, going and coming from school; that children ran down one bank, across the track, and up the other bank; that the place where young Lineberry was injured was an "attractive nuisance"; that it is a childish propensity to slide down steep banks, and that this was the habit of children in this cut, and the defendant's engineer in charge of the freight train saw or could have seen these children, and could have anticipated, by the exercise of due care, that children were in the habit of congregating at this place; that defendant was negligent in running its freight train at twenty-five miles an hour through this cut and the town, contrary to the ordinance of the town; that defendant failed to keep a proper lookout; that, under the facts and circumstances of this case, defendant was negligent; that Lineberry was not a trespasser, but had an implied license to be in the cut and go across the track on a well-known way that had been used by implied consent of defendant, and, on account of his being only 9 years of age, was not guilty of contributory negligence, and that the court below erred in granting a nonsuit.

These contentions cannot prevail, under the facts and circumstances in this particular case. There was a superseding or responsible cause—intervening cause. The evidence of both young Lineberry and his witness, Hoskins, that his companion, Qualls, pushed him under the train. Lineberry said: *"We went within two feet of the train; then Clay Qualls pushed me under the train, and my foot was cut off."* Hoskins said: *"About the time he got on the pass-track he gave him a push and he kind of fell over. At that time, I reckon, the train was about half by."*

Admitting that defendant's train was running through the town of Mebane at the speed of twenty-five miles an hour, in violation of the town ordinance, and it was on that account guilty of negligence *per se*,

was this negligence the proximate cause of the .injury? We think not. The actual cause was Qualls' pushing Lineberry under the train. There was no causal connection between the train's speed and the inexcusable conduct of Qualls.

It is well settled that where the facts are all admitted, and only one inference may be drawn from them, the court will declare whether an act was the proximate cause of the injury or not. In the instant case the facts are all admitted, and the independent cause intervening— Qualls' pushing Lineberry under the train—was the sole proximate cause of the injury.

Shearman & Redfield on the Law of Negligence (6 ed.), Vol. 1, sec. 32, states clearly the vice of plaintiff's contention: "The connection between the defendant's negligence and the plaintiff's injury may be broken by an intervening cause. In order to excuse the defendant, however, this intervening cause must be either a superseding or a responsible cause. It is a superseding cause, whether intelligent or not, if it so entirely supersedes the operation of the defendant's negligence that it alone, without his negligence contributing thereto in the slightest degree, produces the injury. It is a responsible one if it is the culpable act of a human being who is legally responsible for such act. The defendant's negligence is not deemed the proximate cause of the injury, when the connection is thus actually broken by a responsible intervening cause. But the connection is not actually broken if the intervening event is one which might, in the natural and ordinary course of things, be anticipated as not entirely improbable and the defendant's negligence is an essential link in the chain of causation."

"If the wrong and the legal damage are not known by common experience to be usually in sequence, and the damage does not, according to the ordinary course of events, follow from the wrong, they are not sufficiently conjoined, or concatenated as cause and effect, to support an action. If the damages would not have followed the wrong if other independent circumstances had not intervened, for which the defendant is not responsible, the damage cannot be said to be the proximate result of the wrong, or so.connected therewith as to uphold a recovery therefor. But a wrongdoer is responsible for all the consequences that ensue in the ordinary and natural course of events, although those events are brought about by the intervening agency of others, provided the intervening agency was set in motion by the primary wrongdoer, or the acts causing the damage were the necessary or legal and natural consequences of the original wrongful act." Wood on Railroads, Vol. 2, p. 1438.

As an illustration of the many cases on this subject, the case of *Carter v. Towne,* 98 Mass., 567, and 103 Mass., p. 507, is an interesting one: "Defendant sold gunpowder to a child, but the child gave the

powder to its parents, who afterwards allowed the child to take some of it, by the accidental explosion of which he was injured. In an action against defendant it was held that he was not liable, even admitting his negligence, since the act of the parents in negligently allowing the child to have the powder was such an intervening efficient cause as to break the causal connection between defendant's wrongful act and the ultimate injury."

The interesting discussion in plaintiff's and defendant's briefs, in regard to "attractive nuisances," the *"Turntable case,"* and the liability and nonliability in reference to children, we do not think, is raised by the facts on the record in this case. This is a case where the railroad was guilty of violating the speed limit in the town limits of Mebane, and guilty of a misdemeanor and subject to a fine. This violation of a town ordinance made the defendant guilty of negligence *per se,* but that negligence must be the proximate cause of the injury to young Lineberry. In the present case the testimony of the young lad, Lineberry, was that his companion, another young lad who was with him, pushed him under the moving train. This was the intervening, independent, sole proximate cause of the injury, for which the defendant cannot be held liable. The injury was not the natural or probable consequence of defendant's negligence in exceeding the speed limit. Pushing the boy under the train was the proximate cause of the injury. It was an unfortunate and deplorable tragedy, but defendant is in no way responsible for the act of the Qualls boy.

We think the nonsuit was properly granted by the court below.

Affirmed.