BARNHILL, J., concurring in result.
STACY, C. J., and WINBORNE, J., join concurring opinion.
This is an action for actionable negligence, brought by plaintiff against Clyde Lee and Berry B. Freeman, administrator of the estate of Andrew Freeman, deceased, to recover the sum of $250.00 for alleged damage to plaintiff's bus. The defendant Clyde Lee, who owned the automobile involved in the wreck, denied negligence and set up a counterclaim for $250.00 damage to his car. Plaintiff in reply denied the allegations of Clyde Lee. Berry B. Freeman, the administrator of the estate of Andrew Freeman, denied negligence and set up a counterclaim against plaintiff for the sum of $100,000 for negligence in killing Andrew Freeman. The plaintiff denied negligence and set up the plea of contributory negligence.
The issues and verdict are as follows:
"1. Was the bus of the plaintiff, the Queen City Coach Company, *Page 323 
damaged by the negligence of the intestate, Andrew Freeman, as alleged in the complaint? Ans.: `No.'
"2. What damages, if any, is the plaintiff, the Queen City Coach Company, entitled to recover of the defendants Clyde Lee and Berry B. Freeman, administrator of Andrew Freeman, upon the cause of action stated in the complaint? Ans.: `None.'
"3. Was the automobile of the defendant Clyde Lee damaged by the negligence of the driver of the bus of the plaintiff Queen City Coach Company, as alleged in the said counterclaim? Ans.: `Yes.'
"4. Was the intestate Andrew Freeman killed by the negligence of the driver of the plaintiff Queen City Coach Company, as alleged in the counterclaim of the defendant Berry B. Freeman, administrator of said intestate? Ans.: `Yes.'
"5. Did the intestate Andrew Freeman, by his own negligence, contribute to the injuries whereof defendants complain in their counterclaim? Ans.: `No.'
"6. What damages, if any, is the defendant Clyde Lee entitled to recover of the plaintiff Queen City Coach Company upon said defendant's counterclaim? Ans.: `$70.00.'
"7. What damages, if any, is the defendant Berry B. Freeman, administrator of Andrew Freeman, entitled to recover of the plaintiff Queen City Coach Company upon said defendant's counterclaim? Ans.: `$15,000.00.'"
The court below rendered judgment on the verdict. Plaintiff made numerous exceptions and assignments of error and appealed to the Supreme Court. The material ones and necessary facts will be set forth in the opinion.
At the close of defendants' evidence and at the close of all the evidence, the plaintiff made motions for judgment as in case of nonsuit. C. S., 567. The court below refused these motions and in this we can see no error.
On a motion to nonsuit, the evidence is to be taken in the light most favorable to the plaintiff, and he is entitled to the benefit of every reasonable intendment upon the evidence and every reasonable inference drawn therefrom. The competency, admissibility, and sufficiency of the evidence is a matter for the court to determine. The credibility, probative force, and weight is a matter for the jury. This principle is so well settled we do not think it necessary to cite authorities. *Page 324 
The record is voluminous, but the facts are simple. The plaintiff's evidence is discarded, as the jury believed the evidence of the defendants. This evidence is to the effect that B. T. Mullis, the driver of plaintiff's bus, left Asheville, N.C. at 6:55 o'clock p.m., on his run to Charlotte, N.C. He was 25 minutes late, having had to wait on the Knoxville, Tenn., bus. The defendants' intestate, Andrew Freeman, was driving a 1931 model Ford automobile. The bus was traveling in an eastward direction, the Ford was going in a westward direction. The collision occurred about 4 miles north of Shelby, on Thursday, 27 July, 1939, at about 9:15 p.m. The place where the collision occurred was on a curve, the bus going uphill and the Ford coming downhill. The bus, according to witnesses, was running 55, 60 and 65 miles an hour. It was in evidence that the Ford was equipped with proper brakes, steering apparatus and all its important parts were in good condition. The car had oil and gasoline in it. Witnesses who were at the wreck 10 or 15 minutes after the collision said the Ford was torn all to pieces and that Andrew Freeman was under the floor boards dead. The left wheel was off. The body of the car where the driver would sit under the wheel, or under the steering post, was mashed in. The whole left side was all smashed in on the car. One witness testified: "In the cement near this car I saw some scratched places dug out. The car was eight or ten feet from the scratched places. At the time I saw it the Ford car was kind of crossways of the road, a little more so back towards Shelby than toward Rutherfordton. I examined the bus some. It was off the hard surface. The front of the car was headed sort of across the road, a sort of an angle more toward Shelby than Forest City. There was an embankment near where the Ford car was. I would say the embankment was four feet high. The Ford car was up on the bank. The right rear wheel was kind of dug out, sitting in the bank. About 12 to 18 inches from the scratches were little oil marks,and there was a stream right up the highway I guess 60 or 70 feet.Commencing at where the scratches appear, I observed an oil mark, leadingtoward Shelby. The bus was over on the right-hand side, over beyond these marks. I did not measure it but it looked to me like this oil mark was 18or 20 inches from the north side of the black line, or on the Freeman sideof the road." Another witness testified: "Where the cement was torn up, leading in the direction of the bus, a black mark started about 10 inches to the south of the hole in the pavement and about 6 inches south of the hole in the pavement there was another black mark. The small black mark was oil and the center one had been scraped with metal. That black line was 14,16 or 18 inches north of the center line of the highway. I followed that black line to the bus. Going in the direction of where the bus was located,that black line continued on the north side of the center mark *Page 325 23 steps. I stepped it. Then it crossed the black line and this fresh scratched mark, then crossed the center line; it didn't make much of a curve and did not have to as the road was turned. They went practically straight. I followed that to the bus. The mark I have described followed continuously from the place where the hole was dug out to the bus. The steel mark was plain. When it got to the dirt, the steel mark plowed in the dirt 3 or 4 inches and the oil line was right along with it. The left front spindle on the bus was broken off and the left-hand front wheel back a little, and the left front axle was down in the dirt. It was plowing all the way along and when it run into this gulley it went deep into the bank." Numerous witnesses testified to like effect as the above. The center of the highway had a black line to guide traffic. The defendants' contention was that the bus going up hill on a curve at a rapid rate swerved to the left, crossed the black line and struck the left wheel of the Ford coming down. The bus weighed 12,000 pounds and the Ford 3,350 pounds.
Clarence Greer testified, in part: "On or about July 27, 1939, about 9:00 or 9:15, three or four miles west of Shelby, I observed a collision between a Queen City Coach Company bus and a Ford automobile. The bus was traveling toward Charlotte and Shelby and the Ford was coming this way. They collided on a kind of curve, on the bend of the curve. I was behind the bus about as far as from here to those gentlemen sitting there. The bus had passed me some time prior to that. Brice Mullis was driving the bus. I have known him for about a year. I was driving a 1932 model Pontiac coupe. A lady friend, Oma Ledbetter, was with me. She is in Sweetwater, Tennessee, now. At the time I saw the bus and the Ford collide, the bus was over the black line around a foot or two feet. On that curve the bus was making fifty miles an hour, and starting down hill he came by me I would say anywhere from the neighborhood of fifty-five, sixty or sixty-five miles an hour. From my position on the curve I could see the oncoming car. At the time of the collision the Ford was on the northerly side of the road. After the bus passed me, it had to gain on me."
Plaintiff's evidence was in conflict with the defendants', and the evidence in the record showed Greer to be a disreputable man. The plaintiff's evidence on appeal is eliminated as the defendants' evidence only is considered. The questions as to the weight, probative force and credibility was for the jury to determine, not for us.
The plaintiff contends: "From the above, it will be seen that there was only one vital question of fact in the case: Upon which side of the center line did the collision occur?" The jury has decided against plaintiff's contentions. The plaintiff requested the following instructions: "At the conclusion of the evidence the plaintiff, in apt time, by *Page 326 
duly signed and written requests therefor, duly requested the court to charge the jury in part as follows: `1. If you find that the collision in question occurred on the right of the center of the highway in the direction in which the plaintiff's bus was going, you should answer the first issue Yes, and third issue No, and the fourth issue No. 2. If you find as facts from the evidence that as the bus and the automobile were approaching each other, the automobile ran to its left into the path of the bus at a time when the bus was on its right of the center of the highway, you should answer the first issue Yes, and the third issue No, and the fourth issue No.'"
These two instructions are so drawn as to peremptorily instruct the jury to find against the defendants and in favor of plaintiff. They do not even suggest that "If the jury should find by the greater weight of the evidence."
The burden of proof is a substantial right omitted from the requests.
In Fisher v. Jackson, 216 N.C. 302 (304), Schenck, J., for the Court says: "`The rule as to the burden of proof is important and indispensable in the administration of justice. It constitutes a substantial right of the party upon whose adversary the burden rests; and, therefore, it should be carefully guarded and rigidly enforced by the courts. S. v. Falkner,182 N.C. 798, and cases there cited.' Hosiery Co. v. Express Co.,184 N.C. 478."
The plaintiff also requested the court to charge: "3. The plaintiff, in the operation of its bus, had a right to assume that the approaching automobile in which Andrew Freeman was riding would stay on its side of the center of the road, and you should bear this instruction in mind in passing upon the first issue and the third issue and the fourth issue." This was given substantially in the charge as laid down in Shirley v. Ayers,201 N.C. 51 (53-54). "4. Upon the seventh issue, as to what damages, if any, Berry B. Freeman, administrator, is entitled to recover, the said administrator has not shown the amount of any earnings on the part of Andrew Freeman, and in the absence of such evidence, you should not speculate as to what his earnings had been." The plaintiff's prayers 1, 2 and 3 were refused, except as given in the general charge. The fourth was refused.
The court below charged the rule of the road correctly, under the facts in this case: "The court instructs you that there is a statute in this State which is now in force, and which was in force at the time mentioned in the pleadings, which reads as follows: (C. S., 2621 [293]) — `Upon all highways of sufficient width, except upon one-way streets, the driver of a vehicle shall drive the same upon the right half of the highway, and shall drive a slow moving vehicle as closely as possible to the right-hand edge or curb of such highway, unless it is impracticable *Page 327 
to travel on such side of the highway and except when overtaking and passing another vehicle subject to the limitations applicable in overtaking and passing, set forth in section 2621, subsections 296 and 297.'" Under this statute the court below charged, we think, fully as to the rights and duties both of the driver of the bus and of the Ford automobile, and defined proximate cause. In the charge is the following: "As our Supreme Court has declared in the case of Stephenson v. Leonard, 208 N.C. 451, the first requisite of proximate cause is the doing or omitting to do an act which a person of ordinary prudence could foresee might naturally or probably produce the injury complained of, and the second requisite is that such an act or omission did cause the injury. In order that a party may be liable for negligence, however, it is not necessary that he should have contemplated or even been able to anticipate the particular consequence or precise form of the injury, or the particular manner in which it occurred, or that it would occur to the particular person. It is sufficient if the injury complained of was the natural and probable consequence of the negligent act or omission, and if it could have been reasonably anticipated by the party sought to be charged with responsibility therefor that injury or harm to another might follow the wrongful act or omission. In other words, the proximate cause of an injury is that cause which, in natural and continuous sequence, unbroken by any new and independent cause, produced the injury and without which the injury would not have occurred, and one from which any person of ordinary prudence could have foreseen that some injury to another was probable under all the facts as they existed." We think from the entire charge, taken as a whole, the instructions were substantially given.
It is well settled that the prayer of instructions "should be given by the court with substantial conformity to the prayer." Groome v.Statesville, 207 N.C. 538 (540).
The fourth prayer for instructions cannot be sustained. It was in evidence that Andrew Freeman was 19 years of age. He was employed prior to his death for 6 months at $40.00 a month. He was employed by Clyde Lee at the time of his death. It was shown by the evidence that the young man had ability and special aptitu`e for newspaper work. He was a newspaper photographer. He had a high school diploma. He was practical in business, sober and temperate, and his character and habits were good. His physical condition was perfect, except that he was 3 pounds underweight. Other evidence was received in this case without objection on the part of the appellant as to the skill and ability of defendants' intestate in his photographic work. Under the Mortality Tables offered in evidence, N.C. Code 1939 *Page 328 
(Michie), sec. 1790, his expectancy, he being 19 years of age, would be 42.9 years.
The court below charged the jury, to which no exceptions were taken: "The amount of damages which may be recovered in cases arising under section 160 of Consolidated Statutes for the death of a person caused by the wrongful act, neglect or default of another is fixed by section 161 of Consolidated Statutes at `such damages as are a fair and just compensation for the pecuniary injury resulting from such death.' The measure of damages for wrongful death is the present worth of the net pecuniary value of the life to the deceased to be ascertained by deducting the probable cost of his own living and usual and ordinary expenses from the probable gross income derived from his own exertions based upon his life expectancy. As a basis on which to enable the jury to make their estimates, it is competent to show, and for the jury to consider, the age, health and expectancy of the life of the deceased; his earning capacity, his habits, his ability and skill, the business in which he was employed and the means he had for making money — the end of all of its being to enable the jury fairly to determine the net income which the deceased might reasonably have been expected to earn had his death not ensued, and thus arrive at the pecuniary worth of the deceased to his estate. The mortality tables embodied in section 1790 of the Consolidated Statutes have been called to your attention. The court instructs you that in arriving at the life expectancy of the defendant's intestate, you have a right to consider such mortality tables in connection with the other evidence in the case bearing upon the health, constitution and habits of the defendant's intestate, but you are not bound by such mortality tables. It is only the present worth of the pecuniary injury resulting from the wrongful death of the deceased that may be awarded to his administrator. It is not the equivalent of human life that is to be given, nor is punishment to be inflicted or anger to be appeased, or sorrow to be assuaged, but only a fair and just compensation for the pecuniary injury resulting from the death of the deceased is to be awarded." We think the above charge in accordance with the authorities in this jurisdiction. Mendenhall v. R. R., 123 N.C. 275; Russell v.Steamboat Co., 126 N.C. 961.
In Mendenhall v. R. R., supra, at p. 278, the court charged: "The measure of damages is the present value of the net pecuniary worth of the deceased to be ascertained by deducting the cost of his own living and expenditures from the gross income, based upon his life expectancy. As a basis on which to enable the jury to make their estimate, it is competent to show, and for them to consider, the age of the deceased, his prospects in life, his habits, his character, his industry and skill, the means he had for making money, the business in which he was *Page 329 
employed — the end of it all being to enable the jury to fix upon the net income which might be reasonably expected if death had not ensued, and thus arrive at the pecuniary worth of the deceased to his family." Barnesv. Wilson, 217 N.C. 190 (195).
In Hicks v. Love, 201 N.C. 773 (776-7), the rule is thus stated: "The appellant excepted to evidence offered by the plaintiff that the deceased provided for his family, that he had a comfortable home, a 200-acre farm, and a plenty for his family to eat and wear. In determining the pecuniary advantage to be derived from the continuance of a human life, it is competent for the jury in an action for wrongful death, under C. S., 160, to consider evidence as to the age, habits, industry, skill, means, and business of the deceased. Burton v. R. R., 82 N.C. 505; Carter v. R. R.,139 N.C. 499; Carpenter v. Power Co., 191 N.C. 130. A part of this evidence has reference to the industry of the deceased and to the business in which he was engaged and is clearly within the scope of the cases just cited; and we see no convincing reason for holding that the result of his toil as manifested in providing for the support of his family should not be considered as evidence of his constant attention to business. Certainly the admission of the evidence is not adequate cause for a new trial. 17 C. J., 1356, see 244 (3)."
The exception and assignment of error which relates to the introduction of the photograph of Andrew Freeman cannot be sustained. The court made the statement when it was introduced: "The court admits the photograph in evidence and instructs the jury that the same is admitted for the purpose of enabling witness to explain his testimony, and for the purpose of enabling the jury to understand the testimony, and for no other purposes." The picture was not introduced as substantive evidence.
In Elliott v. Power Co., 190 N.C. 62 (65), it is said: "Plaintiffs excepted because certain pictures were submitted to the jury. All of these pictures were used to explain the witnesses' testimony to the jury. It was not error for the court to allow the jury to consider the pictures for this purpose and to give them such weight, if any, as the jury may find they are entitled to in explaining the testimony." Honeycutt v. Brick Co.,196 N.C. 556; Kelly v. Granite Co., 200 N.C. 326; Pearson v. Luther,212 N.C. 412 (425).
As to the speed of the bus, as testified to by Humphries, it was immediately before the collision and competent. The probative force was for the jury. S. v. Leonard, 195 N.C. 242 (251); Barnes v. Teer, ante, 122.
The plaintiff contends that the court erred in permitting Clyde Lee to testify to a statement made by the bus driver about fifteen minutes after the collision, that he "thought he killed a man down the road." *Page 330 
The general principle of law is thus stated in Young v. Stewart,191 N.C. 297 (302-3): "A statement made as a part of the res gestae may be given as evidence, although the person by whom the statement is made does not testify as a witness at the trial. `Res gestae is generally defined,' says Furches, C. J., in Summerrow v. Baruch, 128 N.C. 202, `to be what is said or done contemporaneous with the fact sought to be established, or, at least, so nearly contemporaneous in point of time as to constitute a part of the fact to be proved, and to form a part of it, or to explain it.' The statement must be instinctive rather than narrative or the result of a deliberation. `In order for a declaration to be admissible as a part of theres gestae, it must be the spontaneous utterance of the mind, while under the influence of the transaction, the best being, it has been said, whether the declaration was the facts talking through the party or the party talking about the facts.' 22 C. J., 461, sec. 549, and cases cited; S. v.Spivey, 151 N.C. 676; S. v. Bethea, 186 N.C. 23. It is said that `the modern tendency seems to be to treat spontaneity as a substitute for contemporaneousness, so that the act or declaration is not required to be exactly coincident in point of time with the main fact, but may even be separate from it by a considerable length of time, provided it is so immediately and closely connected with the main fact as to be practically inseparable therefrom, and serviceable to a clear understanding thereof, the element of time being of importance merely as bearing on the question of spontaneity.' 22 C. J., 452. If a declaration is admissible as part of the res gestae, it is competent, no matter by whom said. Queen v. Ins. Co.,177 N.C. 34." Batchelor v. R. R., 196 N.C. 84; Brown v. Montgomery Ward Co., 217 N.C. 368 (371).
The evidence on which this exception and assignment of error is predicated — the testimony of B. T. Mullis, plaintiff's bus driver, and Clyde Lee, witness for defendant — is as follows: (Mullis testified:) "Immediately after the collision, I turned on the light and looked at my passengers. None of them seemed seriously hurt — two were skinned — and went back to the car. I looked in and saw this boyin the car and he was not making any noise and I could not do anything withgetting him out. About that time there was a car coming from Shelby on the highway and I stopped and asked him would he run back to a phone or to Shelby and send an ambulance. I was at the Freeman car." (Clyde Lee testified, in part:) "When I approached the scene of the wreck I saw the bus headed off into the field, headed toward Shelby. At that time I had not observed the other car. The bus was over on the right-hand side of the road in a ditch. I stopped and asked the bus driver if anybody was hurt. He was in the bus at the time with little pieces of paper getting the names of the people on the bus. He said (By the Court) Gentlemen of the Jury, this evidence is admitted to be considered *Page 331 
by you simply as evidence tending to corroborate or contradict plaintiff'switness Mullis as a witness and for no other purpose. It is not to be considered by you as substantive evidence. Ans. (continuing) He was getting the names in the bus and I asked was anybody hurt and he said he did not think so, in the bus, and he said he thought he killed a man down the road. (By the Court) This evidence is admitted to be considered by the jury simply as evidence tending to corroborate or contradict plaintiff's witness Mullis as a witness, and for no other purpose. It is not to be considered by you as substantive evidence."
It will be noted that the bus driver, Mullis, had already testified as a witness in the case, and in admitting the testimony the court charged the jury: "This evidence is admitted to be considered by you simply as evidence tending to corroborate or contradict plaintiff's witness, Mullis, as a witness, and for no other purpose. It is not to be considered by you as substantive evidence." And again, the court, after the evidence was given by the witness Lee, instructed the jury to the same effect, in its consideration of this evidence. The evidence was not offered as part of theres gestae. "I saw this boy in the car and he was not making any noise." Mullis told Clyde Lee "that he thought he had killed a man down the road." The whole evidence shows that he did kill him. The evidence is corroborative and so admitted. It was not prejudicial. The contention cannot be sustained.
The plaintiff contends that the charge of the court below failed to comply with C. S., 564, in that it failed to properly explain and apply the law to the facts. We cannot so hold. The court below defined correctly negligence, contributory negligence, burden of proof and proximate cause. The charge set forth the applicable statutes of the law of the road germane to the facts. The contentions on both sides were fairly and correctly given. The charge consisted of 46 pages, covering every conceivable attitude of the law applicable to the facts. It was a careful, well considered charge and in it we can find no prejudicial or reversible error. None of the exceptions and assignments of error made by plaintiff can be sustained.
No error.