MRS. M. E. GODWIN v. MARK NIXON, ISHAM NIXON AND W. ED NIXON, TRADING AS NIXON BROTHERS, AND W. C. PRATER.

(Filed 6 January, 1953.)

1. **Negligence §§ 17, 19b (1)—**

   Plaintiff in an action to recover for negligent injury must show failure on the part of defendant to exercise due care in the performance of some legal duty which defendant owed plaintiff under the circumstances, and that such negligent breach of duty, acting in continuous sequence, produced the injury, and that such result could have been reasonably foreseen by a man of ordinary prudence under the existing conditions.   Nonsuit is proper if plaintiff's evidence fails to establish any one of these essential elements.

2. **Negligence § 19a—**

   What is negligence is a question of law, and when the facts are admitted or established, the court may say whether negligence does or does not exist and, if so, whether it was the proximate cause of the injury.

GODWIN *v.* NIXON.

**3. Negligence § 19d—**

Where it clearly appears from the evidence that the injury complained of was independently and proximately produced by the wrongful act, neglect, or default of any outside agency or responsible third person, defendant's motion to nonsuit is properly sustained.

**4. Automobiles §§ 8d, 18d, 18h (4)—Evidence held to disclose intervening negligence insulating any negligence in parking on highway.**

In this action by a passenger in an automobile to recover for injuries received when the car in which she was riding collided with the rear of a tractor-trailer which was standing because of a disabled motor and blocking the right-hand traffic lane at a street intersection, *held* the evidence discloses that the negligence of the driver of the car in failing either to keep a proper lookout or to keep his automobile under such control as to be able to stop within the range of his lights was such intervening negligence on the part of the driver of the car as to insulate any negligence in parking the tractor-trailer in violation of statute, or in failing to put out flares, and therefore motion to nonsuit by the owner and operator of, the tractor-trailer was properly allowed.

**5. Automobiles §§ 8d, 18h (2)—**

In this action by a passenger in an automobile to recover for injuries received when the car in which she was riding collided with the rear of a tractor-trailer which was standing and blocking the right-hand traffic lane at a street intersection, *held* the evidence is sufficient to be submitted to the jury as to the negligence of the driver of the car in failing to keep a proper lookout or in failing to keep his car under such control as to be able to stop within the range of his lights, and motion to nonsuit by the owner and operator of the car was improvidently granted.

PARKER, J., took no part in the consideration or decision of this case.

APPEAL by plaintiff from *Godwin, Special Judge,* at February Term, 1952, of JOHNSTON.

Civil action for recovery of damages for personal injuries allegedly suffered and resulting to plaintiff from actionable negligence of defendants when automobile owned and operated by defendant W. C. Prater, in which plaintiff was riding, as it traveled south along Pollock Street on U. S. Highway 301, in a residential district in the town of Selma, North Carolina, came into collision with the rear end of a tractor-trailer of defendants Nixon Brothers, standing on right or west side of said street and highway at the intersection thereof with Preston Street.

(NOTE: This action was consolidated for purpose of trial with two others against Nixon Brothers,—one by Jane Prater and the other by W. C. Prater. Motions of defendants Nixon Brothers for judgment as of nonsuit made at close of evidence for plaintiffs were allowed. And motion of W. C. Prater for judgment as of nonsuit made at same time in the present action was allowed. Only the plaintiff, Mrs. M. E. Godwin,

appeals. The case on appeal apparently contains all the evidence offered by each of the three plaintiffs, including the separate testimony of each.)

The acts of negligence alleged against defendants Mark Nixon and Nixon Brothers as the proximate cause or one of the proximate causes of the injuries sustained by plaintiff in the collision are these: That the said Mark Nixon parked the tractor-trailer and semi-trailer (a) "upon a public highway where it was expressly forbidden to park by the rules and regulations of the State Highway and Public Works Commission";

(b) "in a manner contrary to the laws and statutes of North Carolina as set out in the General Statutes in that he parked the said truck and trailer with the right front wheel of the cab about two (2) feet from the curbing and left the trailer parked in a diagonal direction with the rear of said trailer in the middle of the highway, failing to leave room for the passage of traffic on the left side of said highway";

(c) "in the night time on a public highway without flares or lights showing that said tractor truck and semi-trailer was so parked";

(d) "in an unlawful and illegal manner for more than an hour on a public highway, as she is informed and believes, and hence alleges, after having been ordered by a State Highway Patrolman and a peace officer of the County of Johnston to move said truck and trailer, and . . . failed and refused to move the same or to take any precaution to save the traveling public from harm";

(e) "in direct violation of the statutes by failing to set the brake on the said truck so that the 'Stop' light on said truck would be illuminated and would thus show that said truck and trailer was parked and was not moving"; and

(f) "with no lights of any kind on the rear of said trailer except two small clearance lights, one on each of the extreme outside edges, and said lights were barely visible at a very short distance and the said lights being below the dark load of cotton, and the said trailer being parked diagonally in said street, the said lights merely appeared as the rear lights of a moving vehicle"; and

(g) "wilfully, wantonly and negligently and with a total disregard for the rights of the traveling public, refused and failed to move the truck and trailer from its dangerous position and failed and refused to put out any warning signals or flares so that the traveling public could protect itself."

The acts of negligence alleged against defendant Prater as the proximate, or one of the proximate causes of the injury sustained by plaintiff in the collision are these: That the said W. C. Prater failed "(a) . . . to keep his car under proper control so that he was unable to stop when he had placed himself in a dangerous position by passing a truck traveling in the same direction and found himself at or near the parked truck and

trailer of Nixon Brothers, and as a result collided with the rear of the trailer so parked;

"(b) . . . to keep a proper lookout when passing an overtaken vehicle and thereby failed to see that he could not pass the same in safety and as a result collided with the rear of the parked truck and trailer belonging to Nixon Brothers; and

"(c) . . . to slow down and ascertain that he could safely pass a truck traveling in front of him in the same direction, and as a result collided with the rear of the trailer belonging to Nixon Brothers as set out before," although he knew the dangerous conditions which existed on Highway 301 because of the heavy and continuous traffic through the town of Selma, particularly at the point of the collision, and (d) that W. C. Prater "drove his automobile in a careless and reckless manner, without due regard to the condition of the traffic and traveling public on a highly congested and dangerous highway, attempting to pass an overtaken vehicle without taking proper and due precaution, and failing to keep his car under proper control and thereby collided with the rear of said truck and trailer as set out before."

The defendants Nixon Brothers, answering the complaint, deny in material aspect the allegations thereof, except as to those uncontradicted facts hereinafter recited. They particularly deny the allegations charging them with acts of negligence. And they aver that such injuries as plaintiff sustained are the sole and proximate result of the negligence of the defendant W. C. Prater in specific detail; that the acts of negligence of defendant W. C. Prater superseded any negligence on the part of defendants Nixon Brothers, if any they committed, and without which negligence plaintiff's injuries would not have occurred; that plaintiff was a co-adventurer in the risks of W. C. Prater; and that by her own negligence she contributed to her injuries in manner specified.

And the defendant W. C. Prater, answering the complaint of plaintiff, denies all allegations charging him with negligence and liability therefor, but admits or does not deny other allegations.

These facts appear to be uncontroverted: About 8:10 o'clock on night of 16 February, 1950, W. C. Prater and his wife, Jane Prater, and the plaintiff, Mrs. M. E. Godwin, entered his automobile and started from his home on Anderson Street in the town of Selma, North Carolina, on a trip to some point beyond Smithfield on the Smithfield-Angier highway No. 210, where a friend of Mrs. Godwin lived. The route of the proposed trip was easterly about two blocks along Anderson Street to U. S. Highway No. 301, which is the same as Pollock Street in said town, then southerly along this highway through a residential section within the corporate limit of the town and on to, and through the town of Smithfield,

and then on beyond, and along the Smithfield-Angier highway No. 210 to the destination—which was known only to Mrs. Godwin.          :     . ;

En route, traveling southly from the Anderson-Pollock Street intersection, the Southern Railway line is crossed at end one block, and Wilson Mill Road at end two blocks, and Preston Street at end four blocks. There was a stop light at the intersection with Wilson Mill road, and another at Preston Street intersection.

Pollock Street is straight approximately one-half mile each way from Preston Street. It is paved and approximately 30 feet 8 inches wide from curb to curb at Preston Street.

The truck-trailer of the Nixon Brothers was standing headed in southerly direction, and the Prater automobile was traveling in same direction. The collision occurred at the Preston Street intersection.

Upon the trial in Superior Court the testimony of plaintiff and the Praters,—in respect to the purpose of the trip, tends to show these facts: Plaintiff, a widow, was a guest in the Prater home on 16 February, 1950. And the subject of going to see a man friend of hers, who lived on Highway No. 210, was discussed among the three of them. Mrs. Prater testified: "I know I didn't ask to go to see him first and I don't recall who mentioned it first . . . My husband was told the man we were going to see lived beyond Smithfield. Mrs. Godwin said he lived out on 210 highway. I don't know her exact words. The truth is that Mrs. Godwin wanted my husband to take her to see the man and he was going to be her friend. We took her because she was a guest at our home and she asked me to go . . . This was Mrs. Godwin's first visit to our home . . . After supper on this night we all were going out for a ride to see a friend of Mrs. Godwin's who lived south of Selma."

And in same connection plaintiff testified: "After supper Mr. and Mrs. Prater and I talked it over and decided to go to ride and we got into the car,—decided to see a man who lived out on the Angier highway west of Smithfield . . . I had no particular reason for going out there, but I had known back in the past he was sick and I was down there visiting and we just decided to ride around and we would ride out to see if he was at home. I do not recall who suggested it. At the time of the collision I . . . had been going around with him. I did not especially want to see him, but I thought we would ride out and see how he was getting along . . . I went to see if he was sick or had gotten well . . . Well, I had no purpose whatever to go to see him . . . no reason . . . I do not know how the Praters found out I wanted to go for I did not tell them. The Praters did not know the name of the man until yesterday. I talked about going out there . . ."

And the evidence shown in the record on this appeal tends to show in summary the following: They, Prater, his wife, and plaintiff, started

on the trip. Prater was driving the automobile, Mrs. Prater was sitting in the middle on front seat, and plaintiff, Mrs. Godwin, on the right on front seat. They traveled along Anderson Street to, and turned south on Pollock Street—Highway 301, crossed the railroad at one block, and came to the stop light at intersection of Wilson Mill Road and Pollock Street—Highway 301, at end of two blocks, and two blocks north of the Preston Street intersection. The traffic light there was on red and a large tractor-trailer (not the one involved in the collision) had stopped. The Prater automobile also stopped. Then when the light changed to green the traffic moved forward. Prater pulled his automobile out, and ran around the tractor-trailer, and turned back into the right lane about the middle of the first block at a point "about a block and a half," or "about 510 feet," or "some over 500 feet" from and north of the Preston Street intersection. The Prater automobile was then and there leading the southbound traffic. No other vehicle was between it and the Nixon truck. It proceeded along its right-hand side of the street to, and collided with the Nixon truck at Preston Street.

But, after passing the tractor-trailer and pulling back in line, as above stated, the Prater automobile was meeting traffic—several cars "that had bright lights" going north. Mrs. Prater testified: "The cars that we were meeting were on the south side of the truck when we first saw them. The Nixon truck was setting there between us and at least three other cars which had their lights on and meeting us . . . Two of those three cars met us and the third was passing when I saw the red light."

And in this connection Prater testified: "Just before I saw the reflectors on that truck (Nixon's) I met a car which blinded me and as quick as that car went by there was another car coming up there opposite the Nixon truck . . . I said I saw the reflectors . . . when I met the last car. All three of those cars were in line. There was one even with the truck at the time I hit the truck,—that was the third one. I had already passed two. I was blinded by the last car that met me before I hit the truck. I said all three cars had bright lights . . . I saw the lights of three cars coming down the road and saw two pass the truck. I saw the light of these coming right straight down the street meeting me and I dimmed my lights when I passed the truck at the stoplight. At the time I passed these cars they were beyond the parked truck I hit. I could see them approaching after I crossed the Southern Railroad tracks, a distance of 400 or 500 yards for the road is straight and level. After I pulled back in line . . . I was blinded by the lights of the oncoming traffic when I was close enough on the parked truck . . . All I know is that I was blinded until I didn't have time to go around the truck,—I would say 25 or 30 feet. After I became blinded by the glare of the lights I was blinded until after the cars went by." And to these questions

Prater answered as shown: "Q. Were you blinded after the car (you were meeting) went by? A. I was before it went by. Q. . . . How far did you travel while you were blinded? A. Long enough to pass the car. I cannot say what distance I traveled. I don't know just how short a distance but all the time he was passing me. There were two cars coming and one even with the truck about the time I hit the truck. Q. So you were blinded by the bright lights of three cars? A. Yes, sir. I was a little farther away from the parked truck than 30 feet. I was so close to it that I picked up the reflectors on the back of the truck. I was 25 or 30 feet away then. I applied my brakes and skidded my wheels. The skid marks were not 55 feet long. I didn't put on my brakes until I saw the truck . . . ."

And, in this connection, plaintiff testified: "I don't remember any lights blinding me or any automobile meeting us." And again, "Mr. Prater says he was meeting traffic . . . I said we were 40 or 50 feet away from the parked truck when Prater applied his brakes."

And Mrs. Prater testified: "My husband applied his brakes before the truck was struck . . . The tires skidded and they squealed all the way into the back of the truck. We were not more than 50 feet away when that squealing noise began."

As to speed of the Prater automobile: Prater testified that he was driving his automobile at 25 miles per hour. Mrs. Prater testified to like effect. And plaintiff puts the speed at 25 or 30 miles per hour. But she testified: "I say he failed to slow down, he must have or he would not have hit that truck." And then she concluded by saying: "I can't understand why I allege that 'Mr. Prater failed to keep a "proper lookout."' I must have meant that he was driving too fast, the only thing I can think of . . . I just don't know. I can't answer anything else."

As to skid marks: The evidence is that the skid marks on the pavement immediately behind the Prater automobile measured fifty-five feet in length—from where the marks started to where the front wheels stopped under the truck; and that they were in the right-hand lane of the highway going south at estimated distance of $3\frac{1}{2}$ or 4 or 5 feet from the curb,— nearly straight down the highway, as one witness testified, until about 10 or 15 feet behind the truck, where they turned left, as another testified. This is borne out by the testimony of Deputy Sheriff Lamm, Policeman Ryal and Highway Patrolman Carter—who state that they saw the skid marks, and measured, or saw them measured.

As to brakes on the Prater automobile: Prater testified: "I put on my brakes but my car didn't stop before it struck Nixon's truck. I was running 25 miles per hour with perfect brakes—hydromatic brakes. All I had to do was to hit my brakes and my car responded immediately to the brake."

As to damage to Prater automobile: Prater testified: "My car went under the truck body so far that the truck body was against the cowl of my car. The right-hand side of the hood, right-hand fender and front part of my automobile was rammed up under the truck body and the left side wasn't under the truck." And there is testimony of officers, in this respect, and to the effect that the automobile was smashed up in front and the windshield broken,—that the whole front of it was damaged—hood, grill and radiator.

And the evidence shows that plaintiff was thrown out the front door of the Prater car, and sustained severe and serious injuries to her face and other parts of her person.

As to the location and disablement of the Nixon tractor-trailer: There is testimony of officers to the effect: That the Nixon Brothers truck became disabled, and was pulled over against the curb at the southwest corner of the intersection between Pollock Street—Highway 301, and Preston Street; that before the collision the tractor portion of it was against the curb, and the back end of trailer was setting out some; that the front of it was near the curb at some angle; that the back "could have been 3 or 4 feet" from the curbing that turned back at Pollock Street; and that the trailer was eight feet wide. Patrolman Carter testified: "When I came up behind the Nixon truck, I pulled along side it. So I was about the middle of the street when I was talking to Nixon" the driver.

And there is evidence that the trailer was loaded with cotton; that the cotton was "of a dark color," the top of the bales were "8 to 10 feet from the ground," in opinion of one witness, and "approximately 11 feet high from the truck body and 15 feet from the ground," as estimated by another; and that a large street light, 200, 300 or 400 watts, with reflector, suspended over the intersection, was burning over the cotton,—casting its rays fifty feet around over the entire intersection; Mrs. Prater testified that "the street light was burning over the tractor part of the truck but not over the trailer part."

Also there is testimony that the man in charge of the truck told officers he hoped to get the motor started and soon to be on the move; that it was not many minutes thereafter that the collision in question took place; and that the officer asked the man about putting out some flares, and "he said he was only going to be there a minute because he had called ahead and someone from the shop was coming either to pull him in or help fix the truck . . . He said the truck had just knocked off on him."

And there is testimony that after the collision the tractor-trailer was in substantially the same position as before, except that the front wheel of the tractor was up on the curb; that the rear wheels of the trailer were 18 to 20 inches from the curb had it been extended; that the left rear

wheel would have been ten feet from the curb, if the truck was 8 feet wide; and that there would remain 20 feet from the left-hand edge of the truck to the curb on the opposite side of the street.

As to lights on the Nixon trailer: There is testimony from W. C. Prater, Mrs. Prater and plaintiff that they saw no lights on the trailer until they had gotten within distances, variously estimated to be 20, 30, 40 or 50 feet from it, when the lights of the Prater car picked up two red reflector lights on the rear of the trailer. There is also testimony of an officer traveling north who stopped at the tractor-trailer about 8 o'clock to the effect that he did not see any lights on the rear of the trailer, but that he had no occasion to look back to see. And there is testimony of the State Highway Patrolman Carter to the effect that he traveling south approached the rear of the Nixon trailer around 8 o'clock; that he stopped and talked a minute with the driver, and left; that he had not gone from the scene more than five minutes when he had information as to the collision here in question. He testified: "I am definite when I say I saw lights on the truck when I first went there. I saw two reflectors on the back of the truck . . . There were, I know, four or five lights burning on the back of the truck, all in a row, and two reflectors. There were six or seven lights in all burning including the reflectors . . . There was a clearance light on the side of the truck, indicating the right rear, and there was a clearance light here indicating the left rear, but reflectors were on this location (indicating). I am sure there were three lights together in the center of the truck and that they were burning red. There were red clearance lights. I could see the truck and the lights on the rear of the truck visible 600-700 feet from the rear . . . I saw two red lights burning. They were visible for 500 feet to the rear of the truck. I saw the truck a long ways down the street as I approached it from the rear. The lights were burning on it."

The weather: Prater testified that the weather on this occasion was misty—but not raining. Patrolman Carter testified that the weather was dry and fair—and the hard-surface dry.

No parking signs: Deputy Sheriff Lamm testified: That while there were two or three signs put up by the State Highway Commission about a half block south of the point of collision in front of a tavern, there was no sign prohibiting parking along the street where the collision occurred and never had been so far as he knew; and that there were no "No parking" signs north of the point of the collision.

Plaintiff, Mrs. M. E. Godwin, appeals to the Supreme Court and assigns error.

*Leon G. Stevens and E. Craig Jones, Jr., for plaintiff, appellant.*
*Wellons, Martin & Wellons for defendant Prater, appellee.*
*Hooks & Spence for Nixon Brothers, defendants, appellees.*

GODWIN *v.* NIXON.

WINBORNE, J. This appeal challenges the ruling of the trial court in sustaining the motions of defendants for judgment as of nonsuit in so far as the appealing plaintiff is concerned. This raises the question as to whether or not the evidence offered upon the trial below, as shown in the case on appeal, taken in the light most favorable to plaintiff, is sufficient to make out a case of actionable negligence against either the defendants, Nixon Brothers, or the defendant Prater. Considering the evidence in such light, this Court agrees with the ruling and judgment of the trial court in so far as the defendants Nixon Brothers are concerned, but holds that there is error in the ruling and judgment as it relates to defendant Prater.

In an action for recovery of damages for injury resulting from actionable negligence of defendant, plaintiff must show: (1) That there has been a failure on the part of defendant to exercise proper care in the performance of some legal duty which the defendant owed the plaintiff under the circumstances in which they were placed. And (2) that such negligent breach of duty was the proximate cause of the injury,—a cause that produced the result in continuous sequence, and without which it would not have occurred, and one from which a man of ordinary prudence could have foreseen that such result was probable under the facts as they existed. *Ramsbottom v. R. R.,* 138 N.C. 38, 50 S.E. 448; *Whitt v. Rand,* 187 N.C. 805, 123 S.E. 84. See *Mintz v. Murphy,* 235 N.C. 304, 69 S.E. 2d 849; and *Morris v. Transport Co.,* 235 N.C. 568, 70 S.E. 2d 845, where the authorities are assembled.

If the evidence fails to establish either one of the essential elements of actionable negligence, judgment of nonsuit is proper. *Thomas v. Motor Lines,* 230 N.C. 122, 52 S.E. 2d 377, and *Mintz v. Murphy, supra,* and cases there cited.

And the principle prevails in this State that what is negligence is a question of law, and when the facts are admitted or established, the court must say whether it does or does not exist. "This rule extends and applies not only to the question of negligent breach of duty, but also to the feature of proximate cause," *Hoke, J.,* in *Hicks v. Mfg. Co.,* 138 N.C. 319, 50 S.E. 703; *Russell v. R. R.,* 118 N.C. 1098, 24 S.E. 512; *Lineberry v. R. R.,* 187 N.C. 786, 123 S.E. 1; *Mintz v. Murphy, supra,* and cases cited.

In *Lineberry v. R. R., supra,* in opinion by *Clarkson, J.,* this Court said: "It is well settled that where the facts are all admitted, and only one inference may be drawn from them, the court will declare whether an act was the proximate cause of the injury or not." See also *Nichols v. Goldston,* 228 N.C. 514, 46 S.E. 2d 320. *Mintz v. Murphy, supra,* and cases cited.

Furthermore, it is proper in negligence cases to sustain a demurrer to the evidence and enter judgment as of nonsuit under the provisions of

G.S. 1-183 when, among other grounds, "it clearly appears from the evidence that the injury complained of was independently and proximately produced by the wrongful act, neglect, or default of any outside agency or responsible third person . . .," *Stacy, C. J.,* in *Smith v. Sink,* 211 N.C. 725, 192 S.E. 108, and cases cited in respect to such principle. See also *Powers v. Sternberg,* 213 N.C. 41, 195 S.E. 88; *Butner v. Spease,* 217 N.C. 82, 6 S.E. 2d 808; *Murray v. R. R.,* 218 N.C. 392, 11 S.E. 2d 326; *Luttrell v. Mineral Co.,* 220 N.C. 782, 18 S.E. 2d 412; *Riggs v. Motor Lines,* 233 N.C. 160, 63 S.E. 2d 197; *Mintz v. Murphy, supra.*

In *Smith v. Sink, supra,* it is also said: "We had occasion to examine anew this doctrine of insulating the conduct of one, even when it amounts to passive negligence, by the intervention of the active negligence of an independent agency or third party, as applied to various fact situations, in the recent cases of *Beach v. Patton,* 208 N.C. 134, 179 S.E. 446," and others cited. Then the opinion continues: "These decisions are in full support and approval of Mr. Wharton's statement in his valuable work on Negligence (Sec. 134): 'Supposing that if it had not been for the intervention of a responsible third party the defendant's negligence would have produced no damage to plaintiff, is the defendant liable to the plaintiff? This question must be answered in the negative for the general reason that causal connection between negligence and damage is broken by the interposition of independent responsible human action. I am negligent on a particular subject matter. Another person, moving independently, comes in, and either negligently or maliciously so acts as to make my negligence injurious to a third person. If so, the person so intervening acts as a nonconductor, and insulates my negligence, so that I cannot be sued for the mischief which the person so intervening directly produces. He is the one who is liable to the person injured.'" Then there follows, to like effect, a quotation from *R. R. v. Kellogg,* 94 U.S. 469. See also *Butner v. Spease, supra; Riggs v. Motor Lines, supra; Mintz v. Murphy, supra; Clark v. Lambreth,* 235 N.C. 578, 70 S.E. 2d 828.

In the light of these principles, applied to the case in hand, if it be conceded that the defendants Nixon Brothers failed in the performance of statutory obligations imposed upon them in any respect alleged in the complaint, the evidence fails to show that such failure was a proximate cause of the injury to plaintiff. On the other hand, it is manifest from the evidence that the injury of which plaintiff complains was "independently and proximately produced by the wrongful act, neglect, or default of an outside agency or responsible third person." In so far as Nixon Brothers are concerned, there would have been no injury to plaintiff but for the intervening wrongful act, neglect or default of the driver of the automobile in which she was riding, in failing either to keep a proper

lookout for hazards of the road, such as disabled vehicles, or, in the exercise of due care, to keep his automobile under such control as to be able to stop within the range of his lights. In this respect the case comes within the principle applied in *Weston v. R. R.,* 194 N.C. 210, 139 S.E. 237, and numerous other cases cited in *Morris v. Transport Co., supra.* This exculpates Nixon Brothers. *Powers v. Sternberg, supra.*

Now as to defendant Prater: The evidence shown in the record appears to be sufficient to take the case to the jury on an issue of actionable negligence. Therefore, since there must be a retrial between plaintiff and defendant Prater, and the evidence then may not be the same as it now is, the Court declines to pass upon the question as to whether or not plaintiff and Prater were engaged in a joint enterprise at the time of the collision in question. This subject has been recently treated in *James v. R. R.,* 233 N.C. 591, 65 S.E. 2d 214.

Hence the judgment below:

As to defendants Nixon Brothers is

Affirmed.

As to defendant Prater is

Reversed.

PARKER, J., took no part in the consideration or decision of this case.