ZERO MURRAY v. ATLANTIC COAST LINE RAILROAD COMPANY, AND
MRS. NORMAN ELLIOTT.

(Filed 7 November, 1940.)

**1. Negligence § 1—Definition of actionable negligence.**

In negligent injury actions, plaintiff must show: First, that defendant
failed to exercise proper care in the performance of some legal duty which
defendant owed plaintiff under the circumstances in which they were
placed; and second, that such negligent breach of duty was the proximate
cause of the injury, which is that cause that produces the result in con-
tinuous sequence and without which it would not have occurred, and one
from which a man of ordinary prudence could have foreseen that such
result was probable under all the facts as they existed.

**2. Negligence § 17b—**

Where the facts are admitted or established, it is for the court to deter-
mine as a matter of law whether negligence exists, and if negligence does
exist, whether it was the proximate cause of the injury.

**3. Negligence §§ 19a, 19d—**

A nonsuit should be granted in negligent injury actions when all the
evidence, taken in the light most favorable to plaintiff, fails to show any
actionable negligence on the part of defendant, or when it clearly appears
from the evidence that the injury was independently and proximately
caused by the wrongful act, neglect or default of an outside agency or
responsible third person.

**4. Negligence § 7—**

The intervening act of a third person will not insulate the primary
negligence if such intervening act and the resulting injury could have been
reasonably foreseen.

**5. Master and Servant § 14a—Master must exercise ordinary care to pro-
vide reasonably safe place to work.**

A master is not an insurer of the safety of his servant and his duty to
provide a reasonably safe place to work and to furnish reasonably safe
and suitable machinery, implements and appliances is not absolute, but
he is required to exercise that degree of care which an ordinary prudent
man would exercise under like circumstances for his own safety in fur-
nishing himself a reasonably safe place to work and reasonably safe and
suitable machinery, implements and appliances.

**6. Automobiles § 8—**

The operator of a motor vehicle, independent of statutory requirements,
is required to exercise that degree of care which an ordinarily prudent
person would exercise under similar circumstances.

**7. Same—**

In the exercise of due care, the operator of a motor vehicle is required
to keep same under control and to keep a reasonably safe lookout so as to
avoid collision with persons and vehicles on the highway.

**8. Automobiles § 11—**

It is negligence *per se* for the operator of a motor vehicle to overtake and pass another vehicle traveling in the same direction at a railroad grade crossing. Public Laws of 1937, ch. 407, sec. 112 (c).

**9. Automobiles § 9b—**

It is negligence *per se* for the operator of a motor vehicle to follow another vehicle on the highway more closely than is reasonable and prudent under the circumstances, with regard to the speed of the vehicles, the traffic, and the condition of the highway.

**10. Highways § 19—**

A laborer engaged in repairing a highway may assume that motorists will use reasonable care and caution commensurate with visible conditions, will keep their cars under reasonable control, and will obey and observe the rules of the road, and he is not required to anticipate negligence on their part in failing to do so.

**11. Same: Master and Servant § 14a—**

A railroad company, engaged in repairing a grade crossing, is under duty to the traveling public and under duty to its employees in providing a safe place to work, to use due care to provide and maintain suitable warnings to the traveling public of the presence of its employees at work on the highway crossing, but it has the right to assume that the traveling public will exercise ordinary care and observe the law of the road in the operation of motor vehicles, and the sufficiency of its warning signals must be determined in the light of this circumstance.

**12. Same—Evidence held not to show negligence on part of master proximately causing injury to servant who was struck by car while repairing grade crossing.**

The evidence tended to show that plaintiff, together with other employees of defendant railroad company, was engaged in repairing a grade crossing, that the railroad barricaded half the highway on either side of the crossing, on one side by a railroad dump car and on the other by a railroad motor car, that the employees were working between these barricades, that the barricades were on the same side of the highway and were about three and one-half feet high, and that a standard red warning flag was placed on each on the corner nearest the center of the highway, that the highway was straight and the barricades could be seen for half a mile, that the individual defendant traveling toward the crossing, although she saw the usual crossing warnings and knew she was approaching a crossing, speeded up her car to pass another car traveling in front of her in the same direction, that she thought the other car was slowing up and that she gained speed to pass it when it pulled to the left to go around the barricade, that she did not see the barricade until the other car turned to its left, and that then she was so close to the barricade that she had to hit either the barricade or the other car, that she hit the barricade and struck plaintiff, causing serious injury. *Held:* Defendant railroad company, in the discharge of its duty to exercise due care to maintain proper warnings of the presence of its employees working on the highway, was not required to anticipate negligence on the part of motorists, and the sufficiency of the warnings maintained by it must be determined in this light, but even conceding that there was some evidence of negligence on its part in this respect, the evidence discloses intervening negligence on

the part of the individual defendant which was the efficient, independent, and proximate cause of the injury, and thus insulated any negligence on the part of the railroad company, and its motion to nonsuit was properly allowed. *Held further:* The evidence discloses no reasonable ground for defendant railroad company's foreman to anticipate that the driver would not bring her car under control before colliding with the barricade until too late to warn plaintiff of the impending danger.

SEAWELL, J., dissenting.

CLARKSON, J., concurs in dissent.

APPEAL by plaintiff from *Burney, J.,* at May Term, 1940, of BEAUFORT.

Civil action to recover damages for personal injury allegedly resulting from actionable negligence.

Plaintiff was injured on morning of 1 February, 1939, by an automobile operated by defendant, Mrs. Norman Elliott, while he was at work as a member of a bridge force of defendant, Atlantic Coast Line Railroad Company, composed of seven others and the foreman, J. T. Daily, engaged in repairing or reflooring the grade crossing where the Plymouth-Tarboro Branch of said defendant's railroad intersects with the State Highway from Robersonville to Bethel in the State of North Carolina.

On the trial below evidence for plaintiff discloses that his injury occurred under factual conditions and circumstances substantially these: At the point of the accident the highway crosses the railroad "on something of an angle," estimated by one witness to be forty to forty-five degrees. The highway is surfaced with concrete sixteen or eighteen feet wide to within inches of the ends of the crossties on each side of the railroad. The intervening space is so floored with boards by the defendant Railroad Company as to provide a traveling surface even with the concrete surface of the highway. The bridge force of which plaintiff was a member was engaged in the usual way in repairing the flooring at the crossing in question. The foreman and members of the force, in going to work at 7:30 o'clock on said morning, rode on a railroad motor car to which was attached a railroad dump car on which their working tools and implements were transported. Upon arriving at the crossing the dump car was lifted from the railroad track by the plaintiff and others and placed as a barricade on the concrete portion of the highway on the right side of one traveling from Robersonville toward Bethel, at a distance stated by plaintiff to be ten steps, and by another forty-five feet, from and on the Robersonville side of the railroad track so as to leave one-half or more of the paved portion of the highway on the left side open to traffic. The motor car was lifted and similarly placed on the paved portion of the highway and on the same side thereof, but next to Bethel. The men of the force were working between these barriers and

on the same side. A standard red flag was placed on the dump car and on the motor car, respectively, on the corner nearest the center of the highway. On the dump car there were also "a lot of tools . . . some drift bolts . . . in a bucket, saws, hammers, axe, jack and spike hammer. The jacks were standing up about three feet high; the tools were laying down, and were not piled as much as a foot high." The dump car has four wheels and is about 5 feet long, about 3½ feet wide, and about 2 feet high. The floor of the motor is about same height as the dump car—and with the railing and seats it is about 3½ feet high.

In approaching the crossing from Robersonville: (1) There was a "perfectly open view" and the dump car could be seen for a half mile; (2) at a point variously estimated to be from 125 to 200 feet before reaching the railroad there was a regular railroad cross-arm sign and "there was a North Carolina Stop sign about 125 or 150 feet from the track." (3) The railroad could be seen on both sides of the highway.

The witness J. H. Womble testified: ". . . I passed there the morning of the collision about 9 o'clock. There were hands at work and other signs of operation going on at the place . . . there was a hand car sitting on the side of the road . . . not square but at about a forty to forty-five degree angle. There was a flag laying on the flat car two and a half to three feet from the ground. . . . We did not stop. We passed by riding. There were regular crossing signs, the railroad arm above and the State has got railroad crossing signs. . . . I was riding in a truck. . . . Some hundred and fifty or two hundred feet before you reach the railroad is a railroad warning sign, a cross-arm standing several feet up and the boards were about four feet long, I judge, and I guess the letters were six inches high." Q. "Anybody that had any kind of eyes could see that sign? A. Yes, sir." "After you pass the cross-arm you come to another sign the Highway Commission put up. As I recall it has got 'Railroad' and represents a stop at that time, . . . a regular highway sign showing that there was a railroad ahead of it. There was no vehicle ahead of me. Hanging over from the side of the dump car was a *stall* (staff) with a flag, standard red warning flag. I pulled slightly to my left and went around it in perfect safety. . . . I saw the dump car. . . ."

The defendant, Mrs. Norman Elliott, traveling in an automobile with her mother, sister and two children, on their way from Hertford to Rocky Mount, passed through Robersonville and up to the crossing on the side of the highway on which the dump car and motor car barricades were placed as above stated. As she approached the crossing she overtook another car traveling in the same direction and on the same side of the highway. She speeded up to pass that car and just at that moment it turned to the left to go around the barricade. It went over

the crossing in safety and without colliding with the barricade or injuring any of the workmen. But she kept straight on into the dump car and crossing where plaintiffs and others were at work, striking and seriously injuring plaintiff, who was facing toward Bethel, and also injuring the foreman, who was standing by, directing plaintiff in his work.

Mrs. Elliott, testifying as witness for plaintiff, states in part: "I was driving and there was another car just ahead of me and I didn't see the barricade until he pulled out to go around it and I was right on it, in fact I was just getting ready to pass the other car as he pulled out to the left. I couldn't say exactly how far I was from where plaintiff was working but it was only a short distance; I would say it wasn't much further than from here to the front bench. Before the other car pulled over in front of me he pulled out to the left and went around it and that left the road blocked on both sides. I had nowhere to go but to hit the obstruction or the other car. . . . I had just begun to pass him; I was speeding up the car to pass him as he pulled out and blocked that side and I had to keep straight ahead. He pulled out to his left and I hit the barricade. He had pulled out to go around it. The only warning of any kind that I saw was a faded-out red flag—it wasn't a brilliant new flag, and it was hanging from the end of the car down the center of the highway. . . . On both sides the land was open. . . . The reason I hadn't passed this other car before I saw the railroad sign and was staying back of him—I was going to pass him after I crossed the track. . . . There was a North Carolina Stop sign about a hundred and twenty-five or a hundred and fifty feet from the track. Q. Then after you passed the Stop sign there were railroad cross-arms? A. Yes, they were there—I don't recall that—I have seen them at a number of crossings of course. Q. You saw them at that crossing? A. I suppose I did. I knew I was approaching a railroad and that is why I was staying behind the other car. I was driving on my right-hand side of the highway and had come up behind a car some little distance and was going to pass him as soon as I crossed the railroad. I thought he slowed down and that I would go on and pass him. I didn't start pulling to the left, I started gaining speed to pass him and about time I put on speed he pulled to his left. Q. He slowed down and you put on speed? A. I suppose so. Q. When he pulled to the left he was about as far as from you to the first bench? A. I don't know as he was. I think I was a little nearer him. . . . I was coming almost to the back of his car. . . . Q. You put on speed? A. I think so. . . . I had not driven over fifty miles an hour all day. . . . It couldn't have been over fifty—I don't think at the time I was going that fast. . . . It couldn't have been over that I am sure, probably forty-five. Somewhere

between forty-five and fifty is my estimation. When he pulled out the sign was about as far from me as to the front bench and that is the first time I had seen it. Q. You ran into it and hit the dump car? A. I think so. . . . I do not know just how close I was following the car in front of me, it was pretty close, not over the distance of the length of the car back of him. I was staying back of him with the intention of passing him. . . . It was my intention to pass the other car ahead of me when they slowed down. I did not expect them to pull to the left. I realized I was approaching the railroad just a minute before he pulled out. I did not know that I was approaching a railroad until about a minute before he pulled out in front of me—in just a flash you might say—just as I put my foot on my accelerator to pass him he turned out."

At the close of plaintiff's evidence, the court sustained motion of defendant Railroad Company for judgment as in case of nonsuit. Thereupon plaintiff submitted to judgment of voluntary nonsuit as to defendant, Mrs. Norman Elliott, and appeals to Supreme Court and assigns error.

*John A. Wilkinson and H. S. Ward for plaintiff, appellant.*
*Thomas W. Davis and Rodman & Rodman for defendant, appellee.*

WINBORNE, J. When considered in the light most favorable to plaintiff, we are of opinion that as to the defendant Railroad Company the evidence is insufficient to require that an issue of negligence be submitted to the jury. *Harton v. Telephone Co.,* 146 N. C., 430, 59 S. E., 1022; *Lineberry v. R. R.,* 187 N. C., 786, 123 S. E., 1; *Thompson v. R. R.,* 195 N. C., 663, 143 S. E., 186; *Craver v. Cotton Mills,* 196 N. C., 330, 145 S. E., 570; *Boyd v. R. R.,* 200 N. C., 324, 156 S. E., 507; *Hinnant v. R. R.,* 202 N. C., 489, 163 S. E., 555; *Baker v. R. R.,* 205 N. C., 329, 171 S. E., 342; *Newell v. Darnell,* 209 N. C., 254, 183 S. E., 374; *Smith v. Sink,* 211 N. C., 725, 192 S. E., 108; *Powers v. Sternberg,* 213 N. C., 41, 195 S. E., 88; *Butner v. Spease,* 217 N. C., 82, 6 S. E. (2d), 808.

In an action for the recovery of damages for injuries allegedly resulting from actionable negligence, "The plaintiff must show: First that there has been a failure to exercise proper care in the performance of some legal duty which the defendant owed the plaintiff, under the circumstances in which they were placed; and, second, that such negligent breach of duty was the proximate cause of the injury—a cause that produced the result in continuous sequence and without which it would not have occurred, and one from which any man of ordinary prudence could have foreseen that such result was probable under all the facts as they existed." *Whitt v. Rand,* 187 N. C., 805, 123 S. E., 84; *Evans v. Con-*

struction Co., 194 N. C., 31, 138 S. E., 411; Hurt v. Power Co., 194 N. C., 696, 140 S. E., 730; Thompson v. R. R., 195 N. C., 663, 143 S. E., 186; Templeton v. Kelley, 215 N. C., 577, 2 S. E. (2d), 696; Gold v. Kiker, 216 N. C., 511, 5 S. E. (2d), 548.

The principle prevails in this State that what is negligence is a question of law, and, when the facts are admitted or established, the court must say whether it does or does not exist. "This rule extends and applies not only to the question of the negligent breach of duty, but also to the feature of proximate cause." Hicks v. Mfg. Co., 138 N. C., 319, 50 S. E., 703; Russell v. R. R., 118 N. C., 1098, 24 S. E., 512; Lineberry v. R. R., supra; Clinard v. Electric Co., 192 N. C., 736, 136 S. E., 1.

In Lineberry v. R. R., supra, Clarkson, J., said: "It is well settled that where the facts are all admitted, and only one inference may be drawn from them, the court will declare whether an act was the proximate cause of the injury or not." Again in Russell v. R. R., supra, it is stated that "Where the facts are undisputed and but a single inference can be drawn from them, it is the exclusive duty of the court to determine whether an injury has been caused by the negligence of one or the concurrent negligence of both of the parties."

Furthermore, it is proper in negligence cases to sustain a demurrer to the evidence and enter judgment as of nonsuit, "1. When all the evidence, taken in the light most favorable for the plaintiff, fails to show any actionable negligence on the part of the defendant . . . 2. When it clearly appears from the evidence that the injury complained of was independently and proximately produced by the wrongful act, neglect, or default of an outside agency or responsible third person . . ." Smith v. Sink, supra, and cases cited. See, also, Boyd v. R. R., supra; Powers v. Sternberg, supra; and Butner v. Spease, supra.

"Foreseeability is the test of whether the intervening act is such a new, independent and efficient cause as to insulate the original negligent act. That is to say, if the original wrongdoer could reasonably foresee the intervening act and resultant injury, then the sequence of events is not broken by a new and independent cause, and in such event the original wrongdoer remains liable." Brogden, J., in Hinnant v. R. R., supra; Harton v. Telephone Co., supra; Herman v. R. R., 197 N. C., 718, 150 S. E., 361; Beach v. Patton, 208 N. C., 134, 179 S. E., 446.

In the case in hand the relationship between defendant Railroad Company and the plaintiff is that of master and servant, or employer and employee.

What, then, is the standard of duty owed by the defendant Railroad Company to the plaintiff under the circumstances existing at the time and place of plaintiff's injury? While the books are full of writing on the subject, the accepted and well settled rule is that the master owes to

the servant the duty to exercise ordinary care to provide a reasonably safe place in which to do his work and reasonably safe machinery, implements and appliances with which to work. The master is not an insurer, however. Nor is it the absolute duty of the master to provide a reasonably safe place for the servant to work, or to furnish reasonably safe machinery, implements and appliances with which to work. He meets the requirements of the law, in the discharge of his duty, if he exercises or uses ordinary care to provide for the servant such a place, or to furnish such machinery, implements and appliances, that is, that degree of care which a man of ordinary prudence would exercise or use under like circumstances, having regard to his own safety, if he were providing for himself a place to work, or if he were furnishing for himself machinery, implements and appliances with which to work. This rule of conduct of "the ordinarily prudent man" measures accurately the duty of the master and fixes the limit of his responsibility to his servant. *Marks v. Cotton Mills,* 135 N. C., 287, 47 S. E., 432; *Nail v. Brown,* 150 N. C., 533, 64 S. E., 434; *Rogers v. Mfg. Co.,* 157 N. C., 484, 73 S. E., 227; *Ainsley v. Lumber Co.,* 165 N. C., 122, 81 S. E., 4; *Smith v. R. R.,* 182 N. C., 290, 109 S. E., 22; *Gaither v. Clement,* 183 N. C., 450, 111 S. E., 782; *Tritt v. Lumber Co.,* 183 N. C., 830, 111 S. E., 872; *Owen v. Lumber Co.,* 185 N. C., 612, 117 S. E., 705; *Murphy v. Lumber Co.,* 186 N. C., 746, 120 S. E., 342; *Shaw v. Handle Co.,* 188 N. C., 222, 124 S. E., 325; *Michaux v. Lassiter,* 188 N. C., 132, 123 S. E., 310; *Cable v. Lumber Co.,* 189 N. C., 840, 127 S. E., 927; *Riggs v. Mfg. Co.,* 190 N. C., 256, 129 S. E., 595; *Lindsey v. Lumber Co.,* 190 N. C., 844, 130 S. E., 713; *Hall v. Rhinehart,* 191 N. C., 685, 132 S. E., 787; *Craver v. Cotton Mills, supra,* and numerous other cases.

In *Murphy v. Lumber Co., supra,* it is said: "It is not the absolute duty of the master to provide for his servant a reasonably safe place to work and to furnish him reasonably safe appliances with which to execute the work assigned—such would practically render the master an insurer in every hazardous employment, but it is his duty to do these things in the exercise of ordinary care. *Owen v. Lumber Co., supra.* This limitation on the master's duty is not a mere play on words, nor a distinction without a difference, but it constitutes a substantial fact, or circumstance, affecting the rights of the parties. *Tritt v. Lumber Co., supra.*" See, also, *Cable v. Lumber Co., supra; Lindsey v. Lumber Co., supra.*

In *Riggs v. Mfg. Co., supra,* Clarkson, J., said: "It will be noted that it is the duty of the master to 'use or exercise reasonable care' or 'use or exercise ordinary care' to provide the servant a reasonably safe and suitable place in which to do his work. The master is not an insurer." See, also, *Hall v. Rhinehart, supra.*

In *Gaither v. Clement, supra*, Adams, J., speaking of the character and extent of the master's duty, quotes from Bailey's Law of Personal Injuries (2 ed.), sec. 162, as follows: "The underlying doctrine of the master's duty towards his servant, with respect to the character of the appliances furnished and place of work, as well as other duties that rest upon him, is that of the exercise of ordinary care. His duty does not extend to providing reasonably safe places and appliances, but only to the exercise of reasonable care to provide such, and in determining the liability of the master in the matter of their sufficiency, this rule should be the guiding test."

Under these principles, it was the duty of the defendant Railroad Company, in the present case, to exercise ordinary care to provide for plaintiff a reasonably safe place in which to work, that is, that degree of care which a man of ordinary prudence would exercise under like circumstances, having regard for his own safety, if he were providing for himself a place to work. A breach of such duty would be negligence. The plaintiff charges such breach of duty.

But if it be conceded that there is evidence of negligence on the part of the Railroad Company, we are of opinion and hold that such negligence is insulated by the negligence of the defendant, Mrs. Norman Elliott. In ascertaining the circumstances under which the parties in the present action were placed, it is pertinent to consider what duty, if any, the defendant, Mrs. Elliott, owed to the plaintiff. At the outset let it be noted that it is not contended that the defendant Railroad Company required the plaintiff to work at a place in which it had no right to assign him work. It appears to be taken for granted that the Railroad Company was obligated to keep the flooring of the grade crossing in question in repair so as to provide smooth passage over the railroad track for those traveling upon the highway—and that the plaintiff was lawfully upon the highway and in the performance of his duty as a member of the crew of workmen assigned to do such work.

It is a general rule of law, even in the absence of statutory requirements, that the operator of a motor vehicle must exercise ordinary care, that is, that degree of care which an ordinarily prudent person would exercise under similar circumstances. In the exercise of such duty it is incumbent upon the operator of a motor vehicle to keep same under control, and to keep a reasonably careful lookout, so as to avoid collision with persons and vehicles upon the highway. 5 Am. Jur. Automobiles, sections 165, 166, 167.

In this connection it is appropriate to note, among others, certain limitations the Legislature has placed upon the privilege accorded operators of motor vehicles of overtaking and passing as well as following vehicles proceeding in the same direction. The statute, Public Laws

1937, chapter 407, provides in section 112, subsection "c," that "the driver of a vehicle shall not overtake and pass any other vehicle proceeding in the same direction at any steam or electric railway grade crossing nor at any intersection of highway unless permitted to do so by a traffic or police officer"; and in section 114, subsection "a," that "the driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, with regard for the safety of others and due regard to the speed of such vehicles and the traffic upon and condition of the highway." A violation of either of these statutes would be negligence *per se,* and, if injury proximately results therefrom, it would be actionable. *Williams v. Woodward, ante,* 305.

Applying these principles to instant case, it was the duty of defendant, Mrs. Elliott, to exercise ordinary care in the operation of her automobile, having same under control and keeping a reasonably careful lookout, and to observe the law of the road so as to avoid collision with plaintiff in lawful pursuit of work upon the highway.

A laborer whose duties require him to be on the highway may assume that operators of motor vehicles will use reasonable care and caution commensurate with visible conditions, and that they will approach with their cars under reasonable control, and that they will observe and obey the rules of the road.

"One is not under a duty of anticipating negligence on the part of others, but in the absence of anything which gives or should give notice to the contrary, a person is entitled to assume, and to act on the assumption, that others will exercise ordinary care for their own safety." 45 C. J., 705; *Shirley v. Ayers,* 201 N. C., 51, 158 S. E., 840. See, also, *Cory v. Cory,* 205 N. C., 205, 170 S. E., 629; *Jones v. Bagwell,* 207 N. C., 378, 177 S. E., 170; *Hancock v. Wilson,* 211 N. C., 129, 189 S. E., 631; *Sebastian v. Motor Lines,* 213 N. C., 770, 197 S. E., 539; *Guthrie v. Gocking,* 214 N. C., 513, 199 S. E., 707. The principle has been applied in the courts of other states.

In *Nehring v. Chas. M. Monroe Stationary Co.* (1917), Mo. App., 191 S. W., 1054, where a street sweeper was struck by an automobile, the Court held that he was lawfully upon the roadway and in the performance of his duty, in plain view, and the driver of any vehicle was bound to take notice of him, and to exercise the care enjoined by law upon drivers of such vehicles not to injure him; and that he could rightly assume that this would be done.

In *Papic v. Freund* (1916), Mo. App., 181 S. W., 1161, where a truck ran over plaintiff's leg while he was repairing the floor of a subway entrance to a terminal station, a board having been placed across the side of the entrance to the subway, thus blocking entrance to the side on which he was working, the Court considered the case similar to those

involving, and that it should be disposed of in accordance with, the principle which attends the use of a public street, and said: "In such circumstances, the law devolves the duty upon the defendant's driver to anticipate the presence of persons engaged as plaintiff was, as within the range of reasonable probability, and to exercise due care in making observations to the end of rendering them reasonably secure from injury by being run upon." And further, speaking of plaintiff, the Court there said: "It is certain that the law does not require one so situated to anticipate negligence on the part of others."

In *Ferguson v. Reynolds* (1918), 52 Utah, 583, 176 Pac., 267, where a street sweeper was struck by an automobile, the Court, in upholding an instruction, said, "The instruction, in effect, merely informed the jury that the plaintiff had a right to assume that the driver of the automobile would exercise ordinary care in driving the car. This is certainly the law everywhere. No one using a public street, or being lawfully thereon, is required to assume otherwise than that all persons using the same will exercise ordinary care in doing so and will not expose anyone on the street to unnecessary danger."

In the present case, in accordance with the general rule, the plaintiff had the right to assume, and to act upon the assumption, that the defendant, Mrs. Elliott, and others traveling upon the highway in question, would, in the operation of their motor vehicles, exercise ordinary care, that care which an ordinarily prudent person would exercise under like circumstances, and that they would observe the statutory rules of the road.

Such was the situation of plaintiff with respect to those traveling upon the highway.

Now, then, it may be appropriately stated here that the defendant Railroad Company, while it was engaged in working on the crossing in the highway, also owed to its codefendant, Mrs. Elliott, and others traveling upon the highway, the duty to exercise ordinary care in providing and maintaining reasonable warnings and safeguards against conditions existent at the time and place in question. *Gold v. Kiker, supra.* Likewise, in performing its duty to the plaintiff to exercise reasonable care to provide for him a reasonably safe place in which to work, the defendant Railroad Company owed the duty to plaintiff to exercise ordinary care in providing and maintaining reasonable warning to travelers upon the highway of the presence of plaintiff at work on the crossing in the highway. In the performance of this duty and bearing upon the care to be exercised by it, the defendant Railroad Company, in accordance with the general rule, had the right to assume that its codefendant, Mrs. Elliott, and others using the highway, would exercise

ordinary care and observe the law of the road in the operation of their automobiles.

Applying these principles to the facts in the case in hand, did the Railroad Company exercise ordinary care, under the existing circumstances, in providing reasonable warnings of the fact that its servants were working in the highway? We think so. The highway was straight for half a mile. The railroad could be seen on both sides of the highway. There were both railroad crossing and highway stop signs to indicate the presence of the railroad crossing. In addition, the defendant Railroad Company barricaded the side of the highway with a railroad dump car on one side of the crossing and a railroad motor car on the other—on each of which a standard sized red flag was displayed. The dump car could be seen for a half mile by one approaching from Robersonville. It was in broad daylight.

In this situation, the rule of the ordinarily prudent man does not require Railroad Company, in the performance of its duty to exercise ordinary care to provide plaintiff a reasonably safe place in which to work, to anticipate that the driver of an oncoming car will not see that which is plainly before her—or drive with her car so out of control that she cannot stop when she does see the barricade, or person, in the line of her travel, when, ordinarily, she would have plenty of time and space within which to avoid the injury. Nor was it required in exercise of such care to anticipate that she would violate the provisions of the statute with regard to overtaking and passing and following motor vehicles traveling in the same direction. Public Laws 1937, chapter 407, sections 112 (c) and 114 (a).

The case of *Boyd v. R. R., supra,* enunciates and applies to a similar factual situation the principles of law involved in the case in hand, with respect to question of negligence as well as of proximate cause. There the intestate was employed by defendant as watchman or flagman at a street crossing. On the night in question, upon noting the approach of a freight train, he went upon the crossing with a red lantern, a regular flagman's lantern, and began "flagging the crossing." The operator of one automobile saw the intestate and as he began to stop his car, another car passed him, driving rapidly, and without stopping or attempting to stop, moved on to the crossing at a rapid rate of speed and struck the watchman and knocked him under the train which was then passing over the crossing. *Brogden, J.,* speaking for the Court in sustaining judgment of nonsuit, said: "The only theory upon which the plaintiff seeks to recover is that the lantern furnished by defendant to the flagman was not a proper instrumentality in that it was an oil lantern and did not throw out sufficient light. This theory, however, is not supported by the evidence. The only eye-witness to the killing saw the light and

stopped. The red lantern is a sign of danger. Its size and source of illumination are not material if, in fact, the instrumentality actually gave reasonable warning of danger. The function performed by the appliance is more important upon the facts and circumstances of this case than mere mechanical construction. Moreover, it is manifest that the unfortunate death of plaintiff's intestate was proximately caused and produced by the negligence and reckless act of a third party, and that such reckless and negligent act was in no wise related to, growing out of, or dependent upon any omission of duty upon the part of defendant. Even if there was evidence of negligence upon the part of defendant, the applicable principle of liability is stated in *Craver v. Cotton Mills, supra,* in these words: 'While there may be more than one proximate cause, that which is new and entirely independent breaks the sequence of events and insulates the original primary negligence. This principle would apply if it should be granted that the defendant was negligent with respect to the light in the tower.' Indeed, the ruling of the trial judge was in strict accordance with the principles of law announced in *Lineberry v. R. R., supra; Thompson v. R. R., supra.*"

It is pertinent to compare that case with the one in hand. The principle of law is the same. While in the *Boyd* case, *supra,* the breach of duty charged against the defendant Railroad Company, the master, was the failure to exercise ordinary care to furnish to the plaintiff's intestate, the servant, a reasonably safe lantern with which to work, here the alleged breach of duty against the defendant Railroad Company, the master, is the failure to exercise ordinary care to provide for the servant a reasonably safe place in which to work, in that it failed to provide sufficient warning to travelers upon the highway that plaintiff was working on the crossing in the highway. The factual situations are strikingly similar. Here the warning sign placed upon the dump car is a red flag of standard size. It was in fact seen and observed and the warning heeded by others traveling the highway just as in the *Boyd* case, *supra.* It is not contended that the red flag and the dump car could not be seen. While Mrs. Elliott described the flag as "a faded out red flag" not "a brilliant new flag," it was nevertheless red, according to all the testimony. In truth, she says that she saw it and that "it was hanging from the end of the car down the center of the highway." The witness Womble saw the dump car, with the red flag on it, heeded the warning and passed by in safety and without injury to the plaintiff and others working on the crossing in the highway. The driver of the car which was being overtaken by defendant, Mrs. Elliott, saw the warning, slowed down, turned to the left and passed in safety and without injuring anyone. On the other hand, as stated in brief of counsel for plaintiff, "She (Mrs. Elliott) dashed by in her car with perhaps a reckless

degree of negligence and ran over the plaintiff from behind him." But it is contended that Mrs. Elliott was prevented by the car ahead from seeing the dump car and red flag and that she did not see it until the car ahead turned to the left, when it was too late for her to stop in time to have averted the accident. However, Mrs. Elliott, testifying for plaintiff, frankly admits that she saw the railroad crossing sign and the State Highway stop sign, and that she knew she was approaching the crossing, and that she was traveling at a speed of forty-five to fifty miles per hour. While she stated that she intended to pass the car ahead after she had crossed the railroad track, she said, "I thought he slowed down and that I would go on and pass him. . . . I started gaining speed to pass him and about time I put on speed he pulled to the left." In this situation, she said, "I had nowhere to go but to hit the obstruction or the other car." However, evidence points unerringly to the conclusion that this situation was created by her failure to exercise ordinary care and to observe the law of the road in the operation of her automobile, and that the injury to plaintiff was proximately caused thereby, independent of any act of omission of duty upon the part of the defendant Railroad Company. *Boyd v. R. R., supra.* See, also, *Powers v. Sternberg, supra,* and *Butner v. Spease, supra,* where the subject of intervening negligence has been recently treated and applied.

The evidence discloses no reasonable ground for the foreman of defendant, present at the crossing, to anticipate that defendant, Mrs. Elliott, would not bring her car under control before colliding with the barrier placed as warning, until too late to warn plaintiff of the impending danger.

It is argued in favor of plaintiff's position that two permissible inferences of negligence are deducible from the evidence, first, that the notice to travelers on the highway was inadequate, and, second, that the use of the dump car as a barrier created "a dangerous obstruction in the line of travel." Neither view is predicated on the rule of ordinary care as the correct standard of conduct. The one suggests less, the other more, than ordinary prevision or foresight in providing the plaintiff a reasonably safe place to work. They both miss the mark. The rights of travelers on the highway are not involved in the case. We hold that on the record as presented, the plaintiff has failed to make out a case of actionable negligence against the defendant.

The pertinent authorities sustain the judgment below.

Affirmed.

Seawell, J., dissenting: I regard the decision in this case as a very serious departure from recognized principles of the law of negligence, which may have an important and injurious effect on the safety of the

highway. In all three of its major aspects, I must dissent from the deciding opinion.

I do not agree that the court has been vested with the power to sum up the things done by the defendant in discharge of its duty to furnish plaintiff, its employee, a reasonably safe place in which to work, and to affirmatively declare them to be a sufficient compliance with the rule of the ordinarily prudent man, and that defendant, as a matter of law, was free from negligence. I do not agree with the Court in its holding that the defendant Railroad Company, in the performance of its duty to its employee, might rely on the observance by a stranger of the highway regulations, and that defendant was not required to anticipate negligence from that source. I do not agree that any negligence of which Mrs. Elliott may have been guilty was such an intervening or insulating cause as to exonerate the defendant, since it was competent for the jury to find, by applying common sense, that many of the precautions ordinarily prudent men take under similar circumstances, if they had been taken by the defendant, would have greatly reduced the chances that the accident would occur, and other precautions, just as ordinary, would, without doubt, have prevented it occurring at all.

All these things are matters for the jury.

I confess to an antipathy to legal truisms like "The physician is not an insurer of results," "The storekeeper is not an insurer of the safety of his customers," "The master is not an insurer of the safety of his servants," unless they have an obvious application, or the principle has been attacked. Otherwise, they usually indicate that we are gathering momentum for a skid. They should not obscure the approach to actual negligence or condone it where found. An insistence that defendant be held to the rule of the ordinarily prudent man in providing the plaintiff a safe place in which to work affords no occasion for it to cry out: "You make me an insurer." I find nothing approaching that theory urged upon us in the brief.

We are reminded that "what is negligence is a question of law for the court, when the facts are properly determined," and "the court has the power to say when it exists and when it does not exist." Under what circumstances is the court permitted to say when negligence exists and when it does not exist? Under all circumstances, one might infer, since there is no tie-in of this general statement with the facts of the instant case. To this all-inclusiveness, I demur. The court has no right to exercise such a power over the raw evidence, not a single fact of which it has any authority to "properly determine." But no matter what may be said as to the power of the court to declare what negligence is, or to say when it exists or does not exist upon the facts—all of the rules relating to the exercise of this extraordinary power, whether enlarging

or restricting, are focused in one inescapable proposition: The court cannot take a case away from the jury unless, taking the evidence in the light most favorable to the plaintiff, only a single inference can be drawn from it by reasonable minds, and that inference is unfavorable to the plaintiff. Approach it how we may, there is no compromise with this rule.

It is of the essence of the standard of duty we employ—the rule of the ordinarily prudent man—that these duties are relative, not absolute. Nevertheless, they are *positive;* they are duties which may not be ignored; they are duties of the master, not those of a stranger.

The section foreman met the demand to furnish the plaintiff a reasonably safe place in which to work in a simple and forthrightly manner— he rolled out a dump car in the lane of traffic a few yards from the crossing and rested his case on the public conscience, the statutes in such case made and provided, and the bureau of statistics. The majority of the Court seem to hold that reliance on the statutes, at least, must be accepted as a saving faith. I incline to the view that faith without works is dead. This obstruction was about two feet high, had hanging from it a dingy red flag, and was not attended in any way, nor was it protected by any warning sign down the road or by a flagman. No lookout was kept, nor was any person stationed in a position to warn motor vehicle drivers either of the barricade or the fact that persons were working in the road behind it. There was the usual crossing sign, but how either this or the knowledge that she was approaching a crossing could give any warning to Mrs. Elliott that there were men working in the highway at the crossing, or that a dangerous obstruction had been placed in the lane of travel less than ten yards from where the plaintiff was working, is not explained. Since the road was straight and Mrs. Elliott was traveling in her own right side lane, the obstruction was completely hidden until the car in front suddenly turned aside and left it visible, almost at the moment of the crash. This is not noted here for the purpose of exonerating Mrs. Elliott from negligence. It is set down so that it may be made clear under what circumstances the court permitted the defendant to appropriate her negligence as a part of its own defense against the innocent plaintiff, and as a complete exoneration of its own conduct. That phase of the case will be discussed later.

The plaintiff received no warning of the approach of the car from his foreman or any other person, although the evidence discloses that the foreman could have seen the Elliott car approaching the crossing at a speed now claimed by defendant to have been unlawful and dangerous.

Placing and maintaining this unattended and unwarned of obstruction in the highway was in itself negligence, unrelieved by any negli-

gence of the unfortunate driver. *Keiper v. Pacific Gas & Elec. Co.,* 36 Cal. App., 362, 172 P., 180; *Jackson v. City of Malden* (Mo. App.), 72 S. W. (2d), 850; *Paup v. American Telephone & Telegraph Co.,* 124 Neb., 550, 247 N. W., 411. It was also under the circumstances, whatever its purpose, a violation of the laws prohibiting obstructions in the highway.

If the defendant was negligent in this regard, as the jury might have found, the effect of the opinion is, in this connection at least, to exonerate the defendant company from liability, because, as contended, Mrs. Elliott ought to have discovered its negligence toward its own employee in time to have avoided the injury.

But I pass to the more important evidence of defendant's negligence found in the omission of precautions which the jury, if permitted, might have found to indicate a want of due care.

We cannot travel any distance on the highways without coming upon and observing practices and devices which prudent men employ as safety measures under like circumstances. They are matters of common knowledge and experience. At proper distances from the point of danger we find signs, "Danger, Men Working," "Slow," "Barricade 500 feet ahead," "One-Way Road"; and where the highway has been narrowed by barricade we find men posted to slow traffic and warn of the condition ahead in apt time. Neither the court nor the jury can say that any one or more of these specific things should have been done, but in the light of *what was done* and *what was omitted,* the jury has the right to consider these things as bearing upon the question whether the defendant Railroad Company had given its employee a safe place to work, and had properly protected him, according to the rule of the ordinarily prudent man, under the circumstances as they existed.

Here we must note that plaintiff testified, and this was uncontradicted, that the custom of the defendant had been to place a flagman on each side of the crossing when men were at work in the highway, or a warning sign down the road "Men Working." I copy this here, as it is omitted in the statement and main opinion:

"Q. You have been with them long enough to know what the custom and practice of the railroad has been with them for two years with respect to warnings down the railroad track?

"A. Yes, sir.

"Q. What kind of warnings have they been giving in the two years as a matter of custom?

"A. Sometimes have two boys flagging, one on each end with a flag, and another time we have had a sign down the road 'men working.' "

The opinion frankly holds that the defendant had the right to rely on traffic rules and regulations relating to the conduct of a third party,

or stranger; that the defendant in the performance of its duty to its own employee was not required to anticipate negligence on the part of such third person in nonobservance of these rules—thus ruling out the possibility of concurring negligence. This is, in fact, the basis of the decision. It was, and is, necessary to the conclusion reached by the Court.

Speaking of defendant's duty to plaintiff to exercise ordinary care in providing and maintaining reasonable warning to travelers upon the highway of the presence of plaintiff at work on the crossing in the highway, it is said in the opinion: "In the performance of this duty, and bearing upon the care to be exercised by it, the defendant Railroad Company, in accordance with the general rule, had the right to assume that its codefendant, Mrs. Elliott, and others using the highway, would exercise ordinary care and observe the law of the road in the operation of their automobiles."

And of the care required of defendant: "Nor was it required, in exercise of such care, to anticipate that she would violate the provisions of the statute with regard to overtaking and passing and following motor vehicles traveling in the same direction. Public Laws 1937, chapter 407, sections 112 (c) and 114 (a)." There is no mistaking the absolute character of the immunity thus extended.

I find many cases cited in the opinion which hold that an injured person was not required to anticipate negligence on the part of one whose negligence caused the injury—a sound principle which I am not disposed to dispute, although this Court has been somewhat frugal in its application. *Watkins v. Raleigh,* 214 N. C., 644, 200 S. E., 424. But there is a noticeable and, I think, necessary, break with authority when it is attempted to extend this principle to the employer, who is not on the receiving end, so as to transfer to him, as an immunity, a merely logical protection afforded to the victim of a negligent injury—for example, its own employee. I consider it both novel and dangerous. Taken at its face value, as promulgated by the Court, it wipes out the doctrine of concurring negligence.

I think it is safe to say that this theory is not accepted by textwriters on the subject, is opposed to current legal opinion throughout the country, and is at variance with the holding of this Court. *Groome v. Davis,* 215 N. C., 510, 2 S. E. (2d), 771; Shearman and Redfield on Negligence, 6th Ed., Vol. 1, section 38-A; Harper, Law of Torts, section 123; Restatement of the Law, Negligence, Torts, p. 1198; *Turner v. Page,* 186 Mass., 600, 72 N. E., 329; *Hinnant v. R. R.,* 202 N. C., 489, 163 S. E., 555.

The laws of the highway, and the regulations relating to its use which have the force of law, have put specific duties and burdens on those

operating motor vehicles wholly unknown to the common law, under which the rule of the prudent man was developed, and under which the principle (always much qualified and restricted) that one is not required to anticipate negligence on the part of another found its limited application. *Groome v. Davis, supra.* The right of any person to rely upon the strict observance of a highway regulation by another has always been relative, in no sense absolute, usually to be left with the jury upon the facts, even when we are considering the rights between the injured party and the tort-feasor. It has no application when we are dealing with the interrelated conduct of two or more persons charged with the violation of duty to a third person who is free from negligence, except on the question of reasonable foreseeability, which of itself is ordinarily a matter for the jury; always so when, as with any other fact, reasonable minds might draw different inferences. We are here dealing with the rights of such a third person. In so far as he is concerned, those things which according to common experience are likely to happen on the road when there is a lack of due care on the part of the person who owes him the duty, must be considered within the limits of foreseeability, regardless of how they arise. The failure to take them into account will bring the resulting injury into the category of natural and probable consequence.

Speaking to this identical question, it is said in *Queeney v. Willi,* 225 N. Y., 374, 122 N. E., 198: "Courts should not speak too confidently in determining as a matter of law what may be ignored by prudent people, whose duty it is to be reasonably careful for the personal safety of others." The prudent man must have regard for "occasional negligence, which is one of the incidents of human life." Restatement of the Law, *supra,* p. 1198.

In the same connection, and upon the question of foreseeability, we find in Shearman & Redfield on Negligence, 6th Ed., Vol. 1, section 38-A, the following:

"The familiar proposition that one is ordinarily under no obligation of duty to foresee or anticipate the negligence of another has no application. *It is merely a question of fact for the jury.*"

The effect of the main opinion is to make the test of the employer's duty to his employee to lie in the duty which the defendant was under to its codefendant and other travelers upon the highway, to give to them proper warning; regardless of the fact that negligence on their part might invade the too scanty provision—if the jury should so find—which it made for the safety of its own employee. The slightest contributing negligence on the part of such codefendant, or other third person, would relieve the defendant company from liability to her, and also would have the extraordinary effect of relieving the defendant from

liability to its employee, since defendant was not required to anticipate such negligence.

A person is not excused from liability for failure to perform a duty because another failed to perform his duty. *Wilmington Star Mining Co. v. Fulton,* 205 U. S., 60, 51 L. Ed., 708; *De Funiak Springs v. Perdue,* 69 Fla., 326, 68 So., 234; *Pastene v. Adams,* 49 Calif., 87, 90; *Newcomb v. New York Central Railway Co.,* 169 Mo., 409, 69 S. W., 348.

The duty of the employer to furnish the employee a safe place in which to work is always measured by the rule of ordinary prudence. When that place of work is ambulatory and becomes seated in the middle of a much-used highway, exposing the employee to new hazards, the mere existence of laws on the statute books supposed to prevent or curtail accidents, which as a matter of common experience are frequently violated, will not serve as a substitute for the performance of the duty demanded by ordinary care.

It is said that the road to Hell is paved with good intentions. In the same manner, figuratively speaking, there is scarcely a mile of highway in this State, or, indeed, in the whole country, that is not monumented with violations of traffic laws. Keeping the administration of law in reasonable nearness to the realities of life and social facts, we cannot blind ourselves to actual conditions we know exist—to the experience flooding in upon us every day through press, radio, and the medium of our own eyes. Neither can the defendant. Even the ostrich, believe it or not, no longer buries his head in the sand. In the exercise of ordinary care for the protection of its employee, it was the duty of the defendant to take into consideration those dangers which are within every-day experience, from whatever source they come, and make such provision against them as ordinary prudence requires. Modern legal opinion recognizes the right of the employee to rely upon the rule of the ordinarily prudent man as exemplified in the conduct of his employer, rather than to depend upon its vicarious interpretation by a third person or stranger to whose protection he has not committed himself.

"Consequences caused by defendant's conduct and an intervening independent but foreseeable negligent act of a third person are proximate, and the intervening negligence does not insulate the defendant's original fault. While some cases have been decided contrary to this rule on the theory that we need not anticipate the failure of others to conduct themselves in a lawful manner, the modern view is as stated. Experience assures us that men do in fact frequently act carelessly, and when such action is foreseeable as an intervening agency, it will not relieve the defendant from responsibility for his antecedent misconduct." Harper's Law of Torts, p. 265.

There can be no question here of insulated negligence. If omissions of duty existed of the character pointed out in the complaint and indicated in the evidence, bearing as they do preventively upon the very factors in the conduct of Mrs. Elliott, from which the Court supposed the injury to have come, this negligence cannot be separated out from the chain of causation, and its incidence upon the result. There is never any insulation of the primary negligence except when the intervening negligence of the responsible agency is the sole, or at least the *excluding,* proximate cause of the injury. Otherwise, the negligence is at least concurrent. *Hinnant v. Power Co.,* 187 N. C., 288, 121 S. E., 540; *Earwood v. R. R.,* 192 N. C., 27, 133 S. E., 180.

Where there is omission of a continuing duty, there is continuing negligence. We are not here dealing with a single act of negligence on the part of the defendant to which the conduct of the intervening agency is wholly unrelated. Too, the question is but one phase of proximate cause. Recurring to the omissions on the part of the defendant upon which the plaintiff predicates negligence, I feel sure that no candid mind can deny that some of them which the jury might consider (since they regard devices commonly employed) would have altogether prevented the negligence and conduct held to insulate defendant's negligence. So long as this primary negligence contributes to the final injury, it is not remote; it is proximate.

"The intermediate cause . . . must be self-operating and disconnected with the primary wrong." *Munsey v. Webb,* 37 App. (D. C.), 185, 189; *Ward v. Inter-Island Steam Nav. Co., Ltd.,* 22 Hawaii, 66, 72; citing Cyc.; 45 C. J., p. 926, section 489.

It is to the quality of the intervening act and not to the fact of its subsequence that we must look to determine its effectiveness in displacing the original negligence as proximate cause. Shearman & Redfield on Negligence, 6th Ed., Vol. 1, section 34. In no case where there is, as here, a logical interdependence, which the jury might find, between the original negligence and the intervening negligence, is the original *tort-feasor* relieved of liability. The negligence is concurrent.

Here we come again to the question of foreseeability and to the action of the court in taking the case away from the jury as a matter of law. This power does not seem to be predicated on the assumption that the negligence or behavior of Mrs. Elliott was unforeseeable because of its extraordinary character. Rather, the opinion seems to adhere to the original theory, prominent throughout the case, that the defendant was not bound to anticipate even ordinary negligence on the part of the traveler. As a matter of fact, there is nothing in the record to bear out any assumption that Mrs. Elliott's conduct or negligence was of such an extraordinary character as to be unforeseeable. In the opinion her

negligence is said to consist in the failure to observe certain sections of the law relating to overtaking and passing and following motor vehicles traveling in the same direction; that she drove at a speed of above 45 miles per hour; that she followed the leading car too closely; that she failed to see the barricade. What is so extraordinary in this catalogue of things which occur every day, sometimes with immunity, often with disaster?

Negligent she may have been, but in so far as this plaintiff is concerned, the disaster began when, as the jury might well have found, the defendant company omitted the duty of giving timely warning that men were working in the highway, and placed a dangerous obstruction in the line of travel, especially of such a character as to be concealed, as it was, by the motor vehicle traveling ahead of her in the same direction. This obstruction was a patent factor in the final smash and injury to plaintiff. It is a typical instance of concurring negligence, and the plaintiff may say, with Mercutio: "A plague o' both your houses!"

It is a mistake, therefore, to magnify Mrs. Elliott's negligence into "unforeseeability." With the same respect for the sincerity of my colleagues that I hope to have accorded my own, we have only succeeded in making a bad precedent if we attach such a label to the facts of this case as will make the negligence of Mrs. Elliott of such a character as to make it the sole proximate cause of the injury. Any distortion of the standards applied to the intervening negligent act will correspondingly affect the liability of the original tort-feasor for his own negligence, however great and however it may persist as a contributing cause.

It is not necessary that the exact manner and form of the injurious occurrence should be within the limit of foreseeability. Such prescience is not required either by law or reason as a condition of liability. It is enough if the person guilty of the negligent act or omission of duty could reasonably foresee that it was not improbable that something might occur not wholly unrelated in origin and kind to the actual happening. *Hudson v. R. R.*, 142 N. C., 198, 55 S. E., 103; *Drum v. Miller*, 135 N. C., 204, 47 S. E., 421; *White v. Sharp*, 219 Mass., 393, 107 N. E., 56; *Milwaukee, etc., R. Co. v. Kellogg*, 94 U. S., 469, 24 L. Ed., 256. "The liability of a person charged with negligence does not depend upon the question whether, with the exercise of reasonable prudence, he could or ought to have foreseen the very injury complained of; but he may be held liable for anything which, after the injury is complete, appears to have been a natural and probable consequence of his act." *Fishburn v. Burlington, etc., Railway,* 727 Iowa, 483, 103 N. W., 481; *Edginton v. Burlington, etc., Railway Co.*, 116 Iowa, 410, 90 N. W., 95, 57 L. R. A., 561; Shearman & Redfield on the Law of Negligence, Vol. 1, 6th Ed., section 34.

At any rate, the question whether a supervening negligent act, or an intervening act, in the technical sense, could have been foreseen reasonably, has been consistently dealt with by juries immemorially in determining proximate cause, and the question as presented in the case at bar involves considerations of fact and of fact inference with which the jury alone should be permitted to deal. *Balcum v. Johnson,* 177 N. C., 213, 98 S. E., 532; *Hinnant v. Power Co., supra; Earwood v. R. R., supra; Hinnant v. R. R., supra,* 493.

Divested of confusing technicalities, I think the case boils down to this: The jury might well have held, under the evidence, that the defendant omitted many precautions which common sense, experience of the road, and the practice of prudent men, indicate as reasonably necessary to the safety of men working in the avenue of travel; and yet it is held, as a matter of law, that the defendant is free from negligence. We have an occurrence which the evidence tends to show, and the jury might have found, was the natural and probable result of these omissions; and the Court holds, as a matter of law, it was not foreseeable. We have an injury which the jury might well have inferred would not, and could not, have happened except for the contributing negligence of the defendant—and the Court holds that the supposed negligence of Mrs. Elliott intervened and insulated it from liability.

In this dissent I am not departing from or varying anything this Court has heretofore said upon this subject. There is not a case cited in the main opinion relating to intervening negligence which I might not also cite in support of the views here presented. All of them, where motion to nonsuit was sustained, proceed on the principle (and that alone) that in those particular cases only a single inference as to foreseeability could be drawn. *Hinnant v. R. R., supra,* 493; *Harton v. Telephone Co.,* 141 N. C., 455, 54 S. E., 299; *Taylor v. Stewart,* 172 N. C., 203, 90 S. E., 134; *Lineberry v. R. R.,* 187 N. C., 786, 123 S. E., 1. That is not the case here. At every step in the process of taking this case from the jury, as a matter of law, the presence of undetermined fact, like Banquo's ghost, haunts the exercise of judicial power.

In the very complex situation disclosed by the facts, the inferences cannot be all one way and against plaintiff. *Cole v. Koonce,* 214 N. C., 188, 198 S. E., 637. The case should have been left to the jury, with appropriate instructions.

I am authorized to state that *Justice Clarkson* joins in this dissent.